[Criminal No. 927.  Filed October 19, 1942.]

[130 Pac. (2d) 53.]

STATE OF ARIZONA, Appellee, v. J. C. LEVICE, CHARLES SANDERS and GRADY B. COLE, Appellants.

Mr. Joe Conway, Attorney General and Mr. W. E. Polley, Assistant Attorney General; Mr. John Pintek, County Attorney, and Mr. John F. Ross, Chief Deputy County Attorney, for Appellee.

Mr. J. D. Taylor, for Appellants.

McALISTER, J.—On January 17, 1942, the appellants were accused, by information filed in the superior court of Cochise County, of the crime of willfully, unlawfully and feloniously murdering one Coy C. Qualls on January 8, 1942, and were brought into court for arraignment the day the information was filed. At that time the court appointed an attorney to represent them and after reading the information to them they waived the time to plead and entered pleas of guilty.

After the pleas of defendants had been entered, the court notified their attorney that on the 21st day of January, 1942, three days following the taking of the pleas, a hearing would be had by the court to determine

the seriousness and gravity of the crime in order to assist the court in arriving at the proper punishment and sentence to be imposed on the defendants on their pleas of guilty. At the appointed time the defendants were brought into court, their attorney being present, and the court proceeded to hear the facts respecting the offense, the defendants and their attorney being invited, by the court, to furnish any facts they had, or desired to present, in mitigation of the offense. After hearing the facts, the court proceeded to pass sentence on the defendants in the following manner: The court said:

"J. C. Levice, stand up. Grady B. Code, stand up. Charles Sanders, stand up.

"On the 17th day of January, 1942, you were informed against by the County Attorney of this County for the crime of murder. To this information you have entered a plea of guilty, on the 17th day of January, 1942, to the crime of murder in manner and form as charged in the information.

"J. C. Levice, have you anything to say why judgment of the Court should not be pronounced against you at this time?"

In reply to this question Levice made a statement in his behalf, whereupon the court said:

"Grady B. Cole, have you anything to say why judgment of the Court should not be pronounced against you at this time?"

Grady. B. Cole then made his statement and when he had finished the court said: "Charles Sanders: what have you to say?"

After each of the defendants had made a statement as to his connection with the offense, the court proceeded with the sentence as follows:

"No legal cause being shown or appearing to this Court, the Court doth render its judgment, that, Whereas, you J. C. Levice, Grady B. Cole and Charles

Sanders, having on the 17th day of January, 1942, entered a plea of guilty to the crime of murder, it is,

"*Ordered, Adjudged and Decreed* that you, J. C. Levice, Grady B. Cole and Charles Sanders are guilty of the crime of murder in the first degree, and that you suffer the punishment of death therefor. . . ."

█ █ Two errors are assigned. The first is that since the information was filed against the three defendants jointly and they each plead guilty, the judgment and sentence should have been separately, and not jointly, imposed. In other words, they contend, if I understand their position, that the court should have had the defendants stand up, one at a time, and have imposed judgment and sentence on that particular defendant, and so on with the other two, instead of having all of them arise and using the language described above. There is no statute in Arizona specifically requiring that judgment and sentence be separately imposed where two or more defendants are jointly informed against and jointly prosecuted, though it is clear that what the court did in this case amounted to this. After each defendant was told to stand up and asked if he had anything to say why the judgment of the court should not be pronounced against him, the court did use the word "you" in speaking to them, yet it called each of them by name in telling them that they had entered a plea of guilty to the crime of murder and again when it advised them that they were adjudged guilty of the crime of murder in the first degree and should suffer the punishment of death therefor. This surely applied to each of them individually and personally and no one could possibly have understood it otherwise. A joint judgment and sentence is necessarily one enforcible against either of two or more defendants and it is apparent that the judgment and sentence imposed on these defendants was not such a judgment since the punishment inflicted is such that

no one of them could do more than satisfy that imposed on himself. We have been cited by appellants to no case which upholds their view, except one in a jurisdiction in which the statute of that state specifically required that where several defendants are jointly tried the punishment of each, in case of conviction, must be assessed separately. *State* v. *Johns,* 259 Mo. 361, 168 S. W. 587. In the following cases the courts upheld sentences of the nature of that imposed in this case: *Edmond* v. *Gretten,* 174 Iowa 731, 156 N. W. 828; *State* v. *White,* 125 Tenn. 143, 140 S. W. 1059, Ann. Cas. 1913C, 74; *State v. Hollenscheit,* 61 Mo. 302; *State* v. *Johns, supra.* Under the statutes, it must be just as clear that the sentence is imposed upon each defendant when jointly indicted and prosecuted, as it is where only one defendant is involved, for as said by the court in *State* v. *White, supra* [125 Tenn. 143, 140 S. W. 1060]:

" . . . Each and every one who violates the criminal laws is subject to the whole penalty denounced. There is no partnership in crime, and there can be no division of the punishment that follows its commission. Payment of a fine by one of several offenders cannot be allowed to relieve others equally guilty any more than the imprisonment of one will satisfy the law as to others. The guilt of one neither enhances nor mitigates that of the others. Every one is answerable for his own offense. . . ."

The second assignment is that the court erred in considering a purported confession of the defendant Cole, made in the State of Texas, in determining the punishment imposed. It appears that defendants made a written confession of the crime after they were apprehended in the State of Texas and on January 21, 1942, at the time of sentence, the court asked defendant Cole if he had made a confession of the crime and then requested the county attorney to show Cole the

purported confession and ascertain if he recognized it. Thereupon the attorney for defendants objected to "any proceedings about a confession, ; . . these defendants have plead guilty; that is all they can do." The county attorney then showed a paper to each of the defendants and each stated that his signature appeared thereon. The confession, however, was not introduced in evidence, but the court used it in asking certain questions of the defendants. It appears that the confession signed by Cole contained a statement of a conspiracy by the defendants to kill the deceased Qualls and the defendants contend that since it was made after the object of the conspiracy had been consummated it was not admissible as against the other two defendants. Declarations of a co-conspirator, made in furtherance of the conspiracy, are admissible against another, but those made after the conspiracy is accomplished are not. *Crowell* v. *State,* 15 Ariz. 66, 136 Pac. 279. This rule would perhaps have excluded this statement as against Levice and Sanders if the defendants had gone to trial and this had been offered in evidence, but their guilt had already been established, and the only reason the court considered it was to assist it in determining the punishment to be imposed upon the defendants. Section 43–2903, Arizona Code Annotated 1939, makes it the duty of the court in case of a plea of guilty of murder in the first degree to determine whether the punishment shall be life imprisonment or death, section 44–1025, Arizona Code Annotated 1939, authorizes it to hear witnesses to determine what punishment shall be imposed, and section 44–2222, Arizona Code Annotated 1939, which provides for an inquiry into mitigating or aggravating circumstances of the offense, reads as follows:

*"Inquiry into mitigating or aggravating circumstances.*—Where the court has discretion as to the penalty to be inflicted on the defendant it shall upon

the suggestion of either party that there are circumstances which may properly be taken into considera-- tion, hear evidence as to the same summarily in open court, either immediately or at a special time and upon such notice to the adverse party as the court may direct; or the court may inquire into such circumstances of its own motion.''

■ Under all the authorities to which our attention has been called, the court, in examining witnesses as to aggravating and mitigating circumstances of the offense to aid it in determining the penalty to be imposed, is not bound by the strict rules of evidence applying in trials, since such a proceeding is not a trial in the ordinary sense of the word, *People* v. *Noll,* 20 Cal. 164, but it may consider many matters not admissible on the issue of guilt or innocence. *Toomer* v. *State,* 112 Md. 285, 76 Atl. 118; *People* v. *Williams,* 14 Cal. (2d) 532, 95 Pac. (2d) 456. For instance, it may inquire into the commission of another offense, *People* v. *Popescue,* 345 Ill. 142, 177 N. E. 739, 77 A. L. R. 1199, and the moral character of the accused, *State* v. *Wilson,* 121 N. C. 650, 28 S. E. 416. It may consider affidavits to show aggravation of the offense, *State* v. *Reeder,* 79 S. C. 139, 60 S. E. 434, 14 Ann. Cas. 968, and the unsworn testimony of an officer that a photograph of defendant was in the rogues' gallery, *People* v. *Mansi,* 129. App. Div. 386, 113 N. Y. S. 866. In *People* v. *Popescue, supra* [345 Ill. 142, 177 N. E. 743, 77 A. L. R. 1199], the court used this language:

''Even if it be held that in a trial before a jury it is improper to receive evidence of other offenses than that charged in the indictment, 'it is otherwise when, after a verdict of guilty, the court is called upon to sentence. In such case the court may of its own motion take notice of a prior conviction of the defendant on its own records, or will hear proof of his character and antecedents, either to aggravate or extenuate his guilt.'

3 Wharton's Crim. Proc. (10th Ed.) § 1890, p. 320, and many cases cited.''

The same rule is applied in the federal courts as the following quotation from *Stobble* v. *United States,* 7 Cir., 91 Fed. (2d) 69, 71, discloses:

''After the court had found appellant guilty, counsel were requested by the court to give such information as they had concerning her. Both sides did so, and it is urged that counsel for the Government stated matters concerning her which there was no evidence to support. It seems to be the position of appellant that the court is not permitted to acquire any information other than what would be admissible on a trial before a jury. We know of no such law. After the court had found appellant guilty, it was quite proper for it to acquire any available information concerning her which would enable it to properly determine the appropriate punishment. There was no error committed in this respect.''

██ The court's use of the confession of Cole, even though it did state that the defendants had agreed to kill the deceased, was not error, since it was merely for the purpose of aiding the court in determining whether to impose life imprisonment or the death penalty on defendants who had plead guilty.

No error appearing, the judgment is affirmed.

LOCKWOOD, C. J., and ROSS, J., concur.