460 P.2d 640

The STATE of Arizona, Appellee,

v.

Paul Ray COUNCILMAN, Appellant.

No. 1877.

Supreme Court of Arizona.

In Banc.

Oct. 30, 1969.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., for appellee.

Stanfield, McCarville & Briggs, by Ron L. Briggs, Casa Grande, for appellant.

McFARLAND, Justice.

Paul Ray Councilman, hereafter referred to as defendant, was tried and convicted in 1957 of the crime of first-degree murder and sentenced to life imprisonment. We granted defendant's motion for a delayed appeal from the judgment and sentence of the court.

On January 11, 1957, defendant and four other juveniles were arrested by the highway patrol near Superior, Arizona, on the basis of a juvenile warrant from California. At the time defendant was sixteen years of age. Soon after their arrest, the juveniles were taken to the Pinal County Jail and placed in juvenile cells.

On the 13th of January the body of one Al W. Jennings was found near Arlington, Arizona. The deputy sheriff of Maricopa County in charge of the investigation was informed that the juveniles being held in the jail in Florence had items in their possession bearing the name of Al W. Jennings.

After three days of detention in the county jail at Florence, they were transferred to the Maricopa County Jail, where they were separated and individually questioned about the death of Al Jennings.

The juveniles, before coming to Arizona, traveled from California into Mexico; while in Arizona they picked up the deceased Al Jennings. The scene of the crime was near Arlington, Arizona. The defendant, while he was still under the jurisdiction of the juvenile court, made both an inculpatory and an exculpatory statement in answer to questions by a sergeant from the sheriff's office. After other interrogations, a statement was made which was reduced to writing; present at the time were County Attorney Charles Stidham, Probation Officer Harry Broderick, Juvenile Officer of Maricopa County Lieutenant Trejo and court reporter Pat Kimmis.

The following day the juveniles, including defendant, were taken to the "scene of the crime" for a re-enactment of the crime. They were accompanied by a deputy county attorney, juvenile officers and sheriff's deputies. Thereafter, a hearing was held in the juvenile court, and the defendant was ordered to stand trial as an adult.

On February 27th there was a preliminary hearing conducted by the Honorable R. C. Stanford sitting as a committing magistrate, and the defendant was held to

answer to a charge of murder in the first degree. An information was filed against him on February 28, 1957, and his trial began July 25, 1957.

At the trial some of the juveniles testified implicating the defendant in the crime. Deputy Sheriff Watson testified as to statements made to him, and the transcribed statement was admitted in evidence. The evidence showed that the defendant was not represented by counsel before or during the time he made his statement and he had not been taken before a magistrate. The officers stated that they had not presented the juveniles to a judicial authority because the investigation was not complete.

Defendant, in his brief, contends:

"1. It was error to allow statements made by appellant while he was within the jurisdiction of the juvenile court to be used against him in a regular criminal trial after the juvenile court refused to suspend criminal prosecution.

"2. The admission of statements made by appellant while he was within the jurisdiction of the juvenile court, as aforesaid, constituted a violation of his right to due process of law."

The sole question before this Court is whether a statement made by a juvenile under these circumstances is admissible in his trial as an adult. Officer Watson testified that prior to the taking of the written statement and prior to the oral statement to which Officer Watson testified, the defendant had been detained in a small office at the jail, and that he had kept watch over defendant. He further testified that he did not threaten defendant or promise him anything; that he went to get a glass of water, and when he came back he informed defendant that two of the boys had admitted their part in killing Al Jennings. He then asked defendant if he would like to talk about it. He stated that defendant broke down and cried, and thereafter told him the whole story. This was done before the written statement was made.

The first part of the written and signed statement shows who was present and what was said at that time:

"Q   First, young man, I want to ask you your name.

"A   Paul Ray Councilman, C-o-u-n-c-i-l-m-a-n.

"Q   How old are you, Paul?

"A   Sixteen.

"Q   What is you home address?

"A   6007–¾ Holmes Avenue, Los Angeles 1, California.

"Q   Now, then, Paul, we want to ask you some questions in reference to this case. First, I want to introduce the County Attorney, Mr. Charles Stidham, Harry Broderick, the Probation Officer, and Lieutenant Trejo, Juvenile Officer of Maricopa County. My name is Bob Collins, I am a Sergeant in the Sheriff's office, and this is the Court reporter. We want to advise you at this time that you have a right to a lawyer or you have a right to the Probation Officer to be present at the time of this questioning, and this is the Probation Officer, Mr. Broderick. We want to advise you anything you say here may be used against you in court and that you don't have to answer any questions if you don't want to, but if you do answer any questions, it may be used against you. If you want to answer those questions, we will go on with it."

The record shows that counsel for defendant objected to the admission of the oral statement on the grounds that proper foundation had not been laid, and objected to the admission of the written statement on the ground that defendant was not represented by counsel; he was a boy sixteen' years of age; he was not advised of the "significance of this particular statement that he made"; and it was not shown that the statement was voluntarily made. Counsel pointed out that defendant had been incarcerated in the county jail for several days prior to the making of the statements. Counsel also contended that the statements

were not admissible because of § 8–228, A. R.S. (juvenile code) [1]; that the defendants were in custody of the juvenile court at the time of the statements; and that § 8–228, A.R.S., prevented their use in the trial of defendant as an adult.

We have in two recent cases specifically passed upon the questions raised by the defendant in regard to the admission of statements by a juvenile while under the jurisdiction of the juvenile court and have pointed out that prior to an order by the juvenile court that defendant is to be tried as an adult, he is subject to the jurisdiction of the juvenile court. State v. Cano and Lopez, 103 Ariz. 37, 436 P.2d 586; and State v. Maloney, 102 Ariz. 495, 433 P.2d 625. In State v. Maloney, supra, we set forth the principle of law governing statements by juveniles under such circumstances:

> "As we see it, an inculpatory statement obtained by the police while the child is within the jurisdiction of the juvenile court is part of the evidence gathering function of that court. The fact that such evidence was never offered to the juvenile court in a hearing to adjudicate whether the child is delinquent does not alter the fact that such an inculpatory statement is evidence. In addition, as we noted above, the court in Harling [Harling v. United States, 111 U.S.App.D.C. 174, 295 F.2d 161 (1961)] impliedly stated that admissions obtained by the police while the child is within the jurisdiction of the juvenile court is evidence gathered in the 'juvenile proceedings'.

> \*     \*     \*     \*     \*     \*

> "One of the underlying policies of the Juvenile Court Act is to separate the juvenile process from the criminal procedure. Such a policy is necessary to enhance the rehabilitative program of the juvenile court. We hold as a matter of 'fundamental fairness', and because § 8–228, subsec. B, 2 A.R.S., prohibits the use of such evidence, that inculpatory statements made by a child while under the jurisdiction of the juvenile court and before that court waives its jurisdiction, cannot later be used against the child in a subsequent criminal proceeding unless he and his parents are advised before questioning not only of the child's right to counsel and privilege against self-incrimination, but also of the possibility that he may be remanded to be tried as an adult."

We however, recognized that there were exceptions to the rule of notifying parents. For example, they could not be notified if they did not exist. Also, there might be cases where the interests of the parents and the child were in conflict, such as in cases of divorce, where the parent shows no interest in the child, or where the child is neglected by his parents. In State v. Cano, supra, we followed the rule as set forth in State v. Maloney, supra, quoting extensively therefrom, and further stating:

> "The facts of the Maloney case, supra, and the instant case are similar in that both the exculpatory statement and the written confession were made before Lopez was remanded to adult authorities for trial; hence, they were made while he was within the jurisdiction of the juvenile court. Lopez's parents were not advised of his right to counsel before the questions and of his privilege against self-incrimination, or of the possibility that he

---

1. § 8–228. Effect of adjudication; use as evidence

A. An adjudication by the juvenile court upon the status of a child shall not operate to impose any civil disability, nor shall a child be deemed a criminal by reason thereof. An adjudication by the juvenile court shall not be deemed a conviction, nor shall a child be charged with or convicted of a crime in any court, except where the juvenile court refuses to suspend criminal prosecution.

B. The disposition of a child or of evidence given in the juvenile court shall not be admissible as evidence against the child in any proceeding in another court, nor shall such disposition or evidence disqualify a child in a civil service application, examination or appointment.

might be tried as an adult. Hence the exculpatory statement and written confession, under the holding of this court in State v. Maloney, supra, were not admissible."

In the instant case this procedure clearly was not followed. Before the oral statement neither defendant nor his mother were advised of his right to counsel, or the privilege against self-incrimination, or of the possibility that he might be remanded to trial as an adult, nor does the warning in the written statement comply with the test as set forth in State v. Maloney, supra, and State v. Cano, supra. The statement introduced in evidence showed that neither defendant nor his mother were advised that he might be bound over for trial as an adult. As we have held, "fundamental fairness" requires such a warning. A juvenile in custody of the juvenile court may think—and justifiably so—that if he makes a full confession the juvenile court will give him a chance and will not compel him to stand trial as an adult. If there is any time that a 16-year-old boy needs the advice of his parents it is when he is about to be charged with the crime of murder.

Defendant also relied upon Gallegos v. Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed. 2d 325. The attorney general contends that the standards set down in Gallegos v. Colorado, supra, should not be applied to a case which was tried in 1957, before the decision in that case. Also, State v. Maloney, supra, and State v. Cano, supra, were handed down in 1967 and 1968, and the principles therein stated should not be applicable to a case tried in 1957. The instant case is presented to us on delayed appeal. Rulings in both State v. Maloney, supra, and State v. Cano, supra, were based largely upon an interpretation of the effect of § 8–228, A.R.S. This section of the statutes was in effect at the time of the trial in 1957. The objection was made upon the ground that this section prohibited the admission of the statement and the confession in evidence. The date of the trial does not in any way change the principle of law as set forth in § 8–228, A.R.S. (1956).

We hold that the instant case is governed by State v. Maloney, supra, and State v. Cano, supra. The case is reversed and remanded for further proceedings consistent with this decision.

UDALL, C. J., and STRUCKMEYER, and HAYS, JJ., concur.

LOCKWOOD, V. C. J., did not participate in consideration of this opinion.