521 P.2d 978

**STATE of Arizona, Appellee,**

v.

**John Lewis JONES, Appellant.**

**No. 2506.**

Supreme Court of Arizona,
En Banc.

April 25, 1974.

Rehearing Denied May 28, 1974.

**548**

Gary K. Nelson, Atty. Gen. by Ronald L. Crismon and Stanley L. Patchell, Asst. Attys. Gen., Phoenix, for appellee.

Treon, Warnick & Dann by Richard T. Treon, B. Michael Dann and Robert D. McCracken, Phoenix, for appellant.

HAYS, Chief Justice.

The defendant, John Lewis Jones, appeals from a judgment entered on the jury's verdict finding him guilty of first degree rape and burglary and from a sentence of 9 to 15 years on the burglary conviction and 99 to 100 years for rape. The two sentences are to run consecutively.

The state's case primarily consisted of the testimony of two witnesses. The first witness for the state was the prosecutrix who testified concerning the details of the attack. The prosecutrix identified the defendant as the attacker from a group of ten mugshot-type photographs shown to her several days after the alleged rape and from a subsequent police lineup. The second witness of the state was an expert who testified concerning the results of a neutron activation analysis test performed upon samples of pubic hair previously taken from both the victim and from the defendant.

### WAS THE VICTIM'S IN-COURT IDENTIFICATION TAINTED BY UNDULY SUGGESTIVE PRETRIAL PHOTOGRAPHIC AND LINEUP IDENTIFICATION PROCEDURES?

Defendant maintains that the photographic identification procedure was unduly suggestive because of the ten mugshot-type photographs *only* defendant's photograph was marked "Tempe Police Department," which would indicate to the prosecutrix that only defendant had a Tempe police record. Defendant argues that the Tempe designation geographically links him to the scene of the crime since the victim's residence was less than a mile from the Tempe City Limits. *See* Simmons v. United States, 390 U.S. 377, 383, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

This contention is without merit. Two of the other ten photographs were marked "Phoenix Police Department" and five, "Arizona State Prison." Thus, at least three of the ten photographs tended to link the subject of the photograph with the Phoenix Metropolitan Area. Furthermore, the victim testified that the Tempe designation on defendant's photograph had no influence on her identification. Considering all of these circumstances, there was no "substantial likelihood of misidentification" merely because defendant's picture had the Tempe designation. *Cf.*, Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

Appellant next contends that the victim admitted that prior to attending the lineup she was told that the person whose photograph she had selected would be among those present for her viewing.

However, it has been held that while it might be "improvident" to tell witnesses that the person they had selected from photographs was apprehended, it did not make the subsequent lineup per se impermissibly suggestive or unfair. United States v. Sanders, 322 F.Supp. 947 (E.D.

Pa.1971), aff'd 459 F.2d 86 (3rd Cir. 1972).

"Thus, positive and discerning independent identifications had been made by the witnesses prior to both the lineup and the F. B. I. agent's statement that the man they had identified had been apprehended. After having made such positive identifications, *it was not unreasonable for the witnesses to assume that the man they had identified would be a participant in the line-up. The statement to the witnesses by the F. B. I. agent, while improvident, merely reenforced this assumption,* and in light of all the circumstances, particularly the positive pre-lineup identifications and the fairness of the actual line-up . . . we find that the admission into evidence of the identifications did not violate due process." (Emphasis added). 322 F. Supp. at 952.

█ Defendant next argues that the lineup identification procedure was improper because the prosecutrix was shown five different polaroid photographs of defendant immediately *prior* to the lineup and thus the identification at the lineup was based not upon the recollection by the prosecutrix of the features of her assailant, but upon her recollection of the photographs.

A careful examination of the transcripts of record indicate conflicting testimony as to whether the prosecutrix was shown the five photographs prior to or immediately after the lineup. However, the transcripts of the suppression hearing clearly indicate that the five photographs were shown to the prosecutrix *after* the lineup. Thus, the legal argument of defendant is without factual support.

█ Defendant next maintains that the lineup procedure was improper because the prosecutrix and another witness made impermissible hand gestures to one another, indicating their identification of the defendant. However, the entire record again reveals no factual support for this allegation.

WERE THE AFFIDAVITS IN SUPPORT OF A SEARCH WARRANT AUTHORIZING THE SEIZURE OF SAMPLES OF APPELLANT'S HAIR AND BLOOD LEGALLY SUFFICIENT?

Defendant contends that the search warrant executed twenty-three days after the lineup, authorizing the seizure of blood and hair samples from his person, was not based upon affidavits of fact sufficient to warrant a finding of probable cause. We disagree with this position.

█ The admission of the defendant that he was physically present within the area of the commission of the crime on the day of the crime, coupled with an identification from hair samples taken from the scene of the crime that the suspect was a Negro, constituted probable cause to justify the seizure of hair samples from the defendant.

█ The admission of the defendant of his physical presence within the area of the crime, combined with laboratory analysis of blood left at the scene of the crime indicating the suspect has type "A" blood, constituted probable cause to justify the seizure of blood samples from the defendant.

█ Furthermore, the identification of the defendant by the victim from the police lineup alone constituted sufficient probable cause to believe a crime had been committed and to believe that defendant had committed the crime.

WAS THE DENIAL BY THE TRIAL COURT OF REPEATED REQUESTS FOR A CONTINUANCE AN ABUSE OF DISCRETION WHICH RESULTED IN A DENIAL OF DEFENDANT'S EFFECTIVE ASSISTANCE OF COUNSEL AND DUE PROCESS OF LAW?

Defendant's primary contention is that the denial of his motions for a continuance upon his learning of the scientific identification evidence (neutron activation analysis) only the day before trial was an abuse

of the trial court's discretion which resulted in defendant's being denied effective assistance of counsel and due process of law. Defendant maintains that the entry of the name "Hoffman" on the Information three weeks prior to trial gave neither constructive nor actual notice of the exisence of neutron activation analysis evidence. We disagree.

■ Rule 153, 17 A.R.S., was in effect at the time of the alleged offense. The very purpose and intent of former Rule 153 in requiring the state to endorse the names of witnesses on an information was to *enable an accused to prepare adequately and advisedly for his defense.* State v. King, 66 Ariz. 42, 182 P.2d 915 (1947). At the very least, defendant had three weeks prior to trial to prepare a defense to the testimony of the expert witness concerning the neutron activation analysis evidence.

Defendant relies upon United States v. Kelly, 420 F.2d 26 (2d Cir. 1969). However, this case is easily distinguishable. In *Kelly, supra,* the trial counsel did in fact seek discovery under the analogous federal discovery rule, Rule 26, Federal Rules of Procedure, and the state did not reveal the test results until trial. This fact warranted a new trial. However, in the case at bar, defense counsel failed to move for discovery of the test results under former Rule 195, Arizona Rules of Criminal Procedure, 17 A.R.S.

■ Defendant maintains that scientific results are not discoverable under the purview of former Rule 195, but we feel that this contention is totally without merit.

■ Furthermore, it is well established that the accused is bound by the trial strategy, misconduct and mistakes of counsel so long as counsel's assistance at trial was not reduced to a mere "farce or sham." Bouchard v. United States, 344 F.2d 872 (9th Cir. 1965); Kruchten v. Eyman, 406 F.2d 304 (9th Cir. 1969); State v. Kruchten, 101 Ariz. 186, 417 P.2d 510 (1966), cert denied, 385 U.S. 1043, 87 S.Ct. 784, 17 L.Ed.

2d 687 (1967); State v. Bustamante, 103 Ariz. 551, 447 P.2d 243 (1968); State v. Hill, 104 Ariz. 238, 450 P.2d 696 (1969).

Defendant also relies on State v. McWilliams, 103 Ariz. 500, 446 P.2d 229 (1968), but this case can be distinguished because the denial of adequate representation was the result of the unavailability, until three days before trial, of transcripts of both a former trial and of the preliminary hearing.

It should be noted that the trial court in the instant case did in fact grant a one-day continuance to enable defendant to more adequately prepare his case.

The record indicates that the prosecuting attorney not only instructed the expert witness to assist defense counsel in his understanding of the neutron activation test, but also made available to defense counsel his own research on the subject. Furthermore, the record shows that defense counsel was unable to assure the trial court that a rebuttal expert witness could in fact be called even if a further continuance was granted.

We find no abuse of the judicial discretion of the trial court in its denial of defendant's motions for a continuance.

## WAS THE DENIAL OF THE RIGHT TO RECROSS-EXAMINE WITNESSES AT TRIAL A DENIAL OF THE RIGHT OF CONFRONTATION AND CROSS-EXAMINATION?

■ The right of confrontation and cross-examination of adverse witnesses is of fundamental importance, but it is not a right without limitation. It is well established in Arizona, as well as in many other jurisdictions, that there is no right to recross unless some new issue arises during redirect; otherwise, it is a matter of the trial court's sound discretion. Udall, Evidence, § 47 (1960); 98 C.J.S. Witnesses § 429; Wigmore, Evidence § 1897 (3d ed. 1940); General Petroleum Corp. v. Barker, 77 Ariz. 235, 269 P.2d 729 (1954).

■ The principal purpose of recross is to clarify any new or confusing

matters brought out during redirect. The testimony of Officer Bulzomi on redirect merely reiterated what he had said during the prior direct examination; nothing he said warranted recross. Even assuming *arguendo* that it was error to deny recross, it was clearly not prejudicial and was indeed harmless since the testimony of Officer Bulzomi was not crucial to the defense as defendant maintains.

## DID THE SENTENCE AND THE SENTENCING PROCEDURES VIOLATE THE CONSTITUTIONAL RIGHTS OF DEFENDANT?

■ It is contended by defendant that the trial court was in error in the utilization of an unconstitutionally obtained confession by defendant to his probation officer as a basis for sentencing. However, it is well established in Arizona that the sentencing judge at an aggravation hearing is not bound by the rules of evidence applicable to a trial. *See* State v. Levice, 59 Ariz. 472, 130 P.2d 53 (1942).

■ We need cite only the recent case of State v. Benge, 110 Ariz. 473, 520 P.2d 843 (1974), decided by this court in April of 1974, for the proposition that it is not error for a court to admit illegally seized evidence at a sentencing hearing.

Defendant next maintains that a polygraph examination administered to him concerning an unrelated rape was improperly considered by the sentencing judge.

■ Polygraph results are not admissible for any purpose at trial except on stipulation of the parties. State v. Valdez, 91 Ariz. 274, 371 P.2d 894 (1962), State v. Bowen, 104 Ariz. 138, 449 P.2d 603 (1969). However, in the case at bar, the court did not admit the polygraph results during the trial, but only heard the test results during the aggravation hearing. Citing as authority State v. Benge, *supra*, we find no prejudicial error in the use of the polygraph by

the sentencing judge in his attempt to individualize the sentence.

■ Defendant next asserts denial of the Sixth Amendment right to counsel when he made a voluntary confession to his probation officer without being given his Miranda rights *after* being convicted by a jury. Defendant cites no authority for this proposition and we are aware of no legal support ·for this contention.

Defendant's final assignment of error is that the trial court's sentence to the Arizona State Prison for a term of not less than nine (9) years nor more than fifteen (15) years for burglary and not less than ninety-nine (99) years nor more than one hundred (100) years for rape was excessive and constitutes an abuse of discretion.

■ The defendant was convicted of first degree rape and burglary. This court has repeatedly held that the discretion of the trial judge in the matter of sentencing will not be disturbed except in the most unusual circumstances, provided the sentence is within the statutory limits for the offense charged. State v. Rogers, 109 Ariz. 55, 505 P.2d 226 (1973). Based upon the seriousness of the crimes of burglary and rape, the results of a polygraph examination taken voluntarily by the defendant concerning an unrelated rape, the similarity of the modus operandi of defendant to the modus operandi of other offenses committed within the same geographical area, a prior plea of guilty to two separate second degree burglary charges, an admission by defendant to his probation officer of his involvement in a total of five prior burglaries, and the fact that the sentence was within the range of punishment permitted by the statute, no abuse of discretion by the court below has been shown.

Judgment affirmed.

CAMERON, V. C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.