**John Lewis JONES, Plaintiff-Appellant,**

v.

**Harold J. CARDWELL, Superintendent Arizona State Prison, Defendant-Appellee.**

**No. 76–3434.**

United States Court of Appeals, Ninth Circuit.

Dec. 20, 1978.

B. Michael Dann, Phoenix, Ariz., for plaintiff-appellant.

Galen H. Wilkes, Georgia Ellexon, Asst. Attys. Gen., Phoenix, Ariz., for defendant-appellee.

Before TRASK and KENNEDY, Circuit Judges, and THOMPSON,* District Judge.

BRUCE R. THOMPSON, District Judge.

This is an appeal from the judgment of the district court dismissing petitioner's petition for a writ of habeas corpus with prejudice.

---

* Honorable Bruce R. Thompson, United States District Judge for the District of Nevada, sitting by designation.

Petitioner was convicted in the Superior Court, Maricopa County, Arizona, of the offenses of first degree rape and burglary and was sentenced to consecutive sentences of nine to fifteen years for burglary and ninety-nine to one hundred years for rape. The convictions and sentences were affirmed on appeal. *State v. Jones,* 110 Ariz. 546, 521 P.2d 978 (1974).

The federal petition for habeas corpus alleges that a petition for certiorari to the United States Supreme Court was filed and denied on November 11, 1974 (419 U.S. 1004, 95 S.Ct. 324, 42 L.Ed.2d 280).

The grounds for relief alleged are:

1. Unduly suggestive pre-trial identification procedures unconstitutionally tainted the rape and burglary victim's purported in-court identification of petitioner.

2. Samples of petitioner's hair were unconstitutionally seized under a search warrant, the Affidavit for which was insufficient under the Fourth Amendment.

3. The trial court's denial of a trial continuance to permit petitioner's trial counsel to prepare to meet the prosecution's evidence of a neutron activation analysis denied petitioner the right to effective assistance of counsel and due process of law.

4. The trial court's flat prohibition against recross-examination of the prosecution's witnesses by petitioner's trial counsel denied petitioner his Sixth Amendment rights to confrontation and cross-examination.

5. An illegal confession obtained in violation of petitioner's Fifth and Sixth Amendment rights was used against the petitioner by the trial court in imposing sentence.

6. Negative polygraph tests results were used against the petitioner at the trial court sentencing hearing in violation of the Fifth Amendment privilege against self-incrimination.

7. Petitioner was denied his Sixth Amendment right to representation by a reasonably competent attorney at the trial and sentencing.

8. Petitioner's state court sentence totaling 108 to 115 years in prison is so excessive as to violate the Eighth Amendment ban against cruel and unusual punishment.

The petition alleges that grounds 1 to 5 and 8 were presented to the Arizona Supreme Court on direct appeal and that grounds 5 through 7 were also alleged in a motion for post-conviction relief, which was denied by the Superior Court on September 24, 1975, and that the Supreme Court of Arizona denied review on April 20, 1976. Inasmuch as there is no transcript pertaining to the motion for post-conviction relief, we infer that it was denied without an evidentiary hearing.

There is only one of petitioner's contentions that gives us any concern. With respect to all the others, the treatment accorded them by the Arizona Supreme Court and the federal district court was quite correct. The one sticky issue is whether an unconstitutionally obtained confession was used to enhance the sentences rendered.

Jones did not testify at his trial. No confession or incriminating admissions were offered as part of the state's case except an admission that he had been in the vicinity where the crime occurred on that night but not at the time of the occurrence. Thus it appears that Jones had consistently invoked his Fifth Amendment privilege against self-incrimination.

Arizona long has had a statute which provides for an inquiry into aggravating and mitigating circumstances to assist the court in fixing a discretionary sentence. See: *State v. Levice,* 59 Ariz. 472, 130 P.2d 53 (1942). After the jury verdicts of guilty in the instant case, a two and one-half day aggravation hearing was held during which the state produced evidence of numerous other burglaries and rapes which had been committed in Phoenix and other nearby communities and in which there was used the same general modus operandi as that used in the offenses for which defendant had been convicted. As a consequence of certain circumstantial evidence uncovered in connection with two or three of the other offenses, defendant had become a prime

suspect of the Phoenix police. This aggravation hearing was completed on January 10, 1973. Bail had been revoked when the guilty verdicts were returned and defendant was then incarcerated in the Maricopa County Jail.

On January 11, 1972, defendant was interviewed in the Maricopa County Jail by Mr. Rupert Loza, a Deputy Adult Probation Officer, who was then in the process of preparing a pre-sentence report. The interview resulted in a complete confession by the defendant, not only of the two offenses of which he had just been found guilty but a confession of guilt with respect to the many other rapes and burglaries that had been alluded to in the aggravation-mitigation hearing. The record of the proceedings on sentence shows beyond doubt that the sentences of ninety-nine years plus were a direct result of the confessions elicited by the probation officer.

The three-pronged attack upon the sentence contends: (1) that the failure of the probation officer to notify defense counsel in advance of the scheduled pre-sentence interview deprived defendant of the effective assistance of counsel; (2) that the failure of the probation officer to give *Miranda* (*Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)) warnings to defendant and to obtain a waiver of the presence of counsel rendered the confession involuntary; (3) that the confessions were in fact involuntary. The third contention was first elaborated upon in affidavits filed supporting petitioner's motion to alter and amend judgment and for relief from judgment after the district court had denied the petition for a writ of habeas corpus. We, nevertheless, consider it in view of the lack of finality attaching to habeas proceedings. *Price v. Johnston,* 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948); *Sanders v. United States,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).

Inasmuch as there has never been an evidentiary hearing with respect to the circumstances under which the defendant's full confession of many vicious criminal acts was obtained, we are left with the alternatives of announcing per se rules applicable to this type of situation or of requiring a more complete and enlightening development of the factual background. We opt for the latter alternative. This case presents serious problems respecting the administration of the pre-sentence investigation and sentencing processes in both the federal and state systems and if these problems should reach the Supreme Court for its consideration, we are satisfied that in accordance with its historical practices the High Court will require a full development of the facts before announcing a ruling. "Constitutional and other questions of a large public import should not be decided on an inadequate factual basis". 5 Moore's Federal Practice 2nd Ed. p. 56–772. See: *Kennedy v. Silas Mason Co.,* 334 U.S. 249, 68 S.Ct. 1031, 92 L.Ed. 1347 (1948); *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971); *Cowgill v. California,* 396 U.S. 371, 90 S.Ct. 613, 24 L.Ed.2d 590 (1970). Cf. *Brown v. Illinois,* 422 U.S. 590 at 604, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

In the light of the foregoing conclusion that a remand is required, anything we might now say about the merits of the issues presented would be purest dictum. It is, nevertheless, relevant to point out that in the light of the briefs of counsel and our independent research, this is a case of first impression.

Collaterally, the problem of admissibility of extra-judicial admissions and confessions in parole revocation and probation revocation proceedings has undergone judicial scrutiny. Such a case was presented in *Ohio v. Gallagher,* 425 U.S. 257, 96 S.Ct. 1438, 47 Ed.2d 722 (1976), but the Supreme Court did not reach the merits, remanding it to the Ohio Supreme Court for a statement respecting whether its judgment rested upon federal law. The cases, state and federal: *Ohio v. Gallagher,* 38 Ohio St.2d 291, 313 N.E.2d 396 (1974); *State v. Lekas,* 201 Kan. 579, 442 P.2d 11 (1968); *Gilmore v. People,* 171 Colo. 358, 467 P.2d 828 (1970); *Nettles v. State,* Fla.App., 248 So.2d 259 (1971); *United States v. Deaton,* 468 F.2d

541 (5th Cir. 1972); *United States v. Johnson,* 455 F.2d 932 (5th Cir. 1972), reach varying results concerning the admissibility of uncounselled confessions procured without *Miranda* warnings from probationers and parolees, depending on the facts of the particular case. These cases have slight applicability to our problem and are alluded to only to highlight the differences between the status of a supervised parolee or probationer and a convicted but unsentenced defendant. Cf. *United States v. Segal,* 549 F.2d 1293 (9th Cir. 1977). A defendant under parole or probation supervision often talks to his supervising officer as a counsellor and confidante, and the dual role of such an officer creates additional complications vis-a-vis a subject's extra-judicial confessions to him.

In the present case, while a jury verdict of guilty had been rendered, and an extensive aggravation-mitigation hearing had been conducted, the defendant-petitioner had not yet been sentenced. The *Miranda* case, supra, abjures in-custody interrogation of a defendant by law enforcement officers absent the required warnings and waiver. In our situation, what was the role of the court employee who conducted the pre-sentence interview? We cannot assume that the obligations and responsibilities of Mr. Rupert Loza under Arizona law were the same as those of federal probation officers, or of similar officers under any others of the laws of the fifty states. Did Mr. Loza at the time occupy the status of a law enforcement officer under Arizona law or was his legal position that of a neutral person obtaining impartial information for the assistance of the court? Further, irrespective of his legal status, what in fact did Mr. Loza do in preparation for the interview, what was his association with the District Attorney's Office of Maricopa County, and what were his specific objectives when he interviewed Mr. Jones? Answers to these questions may aid a determination of whether the confessions were elicited by a law enforcement officer within the contemplation of *Miranda.*

Also involved is an issue of whether Jones confessed with full knowledge of his rights and in substance effectively waived the assistance of counsel. We do not know what advice, if any, his attorney gave him respecting the anticipated pre-sentence interview by the probation officer. We do not know how many times in the past, and how recently (cf. *Maguire v. United States,* 396 F.2d 327 (9th Cir. 1968)) the defendant had been given full *Miranda* warnings. Finally, we have no reliable information respecting the circumstances of the interview itself, the character and kind of psychological pressures or actual misrepresentations that may or may not have been employed, the spontaneity or absence thereof of defendant's confessions of villainy and other factors bearing upon the reliability of the evidence.

These matters are not listed by way of limitation. They are merely illustrative of the types of inquiries which may be pursued by imaginative counsel and an informed court toward the development of an adequate foundation of facts to support a proper legal decision.

There is nothing said in this memorandum which is intended to intimate in any way the opinions of any member of this court respecting the merits of any of the viable issues remaining for consideration on remand.

The case is remanded for further proceedings.