612 P.2d 484

The STATE of Arizona, Appellee,

v.

Richard RODRIGUEZ, Appellant.

No. 4094.

Supreme Court of Arizona,
In Banc.

May 12, 1980.

Rehearing Denied June 17, 1980.

Robert K. Corbin, Atty. Gen., by William
J. Schafer, III, Diane M. Ramsey and Crane

McClennen, Asst. Attys. Gen., Phoenix, for appellee.

McCarthy & Sandman by Cary Sandman, Tucson, for appellant.

CAMERON, Justice.

This is an appeal by defendant Richard Rodriguez from a verdict and judgment of guilt to the crimes of first degree murder, A.R.S. §§ 13–451, –452, –453; [1] four counts of assault with a deadly weapon, A.R.S. § 13–249(A) and (B), a sentence of life without the possibility of parole for twenty-five calendar years, A.R.S. § 13–454(D), as to the murder conviction, and ten to twenty years on each count of assault, to run concurrently. We have jurisdiction pursuant to A.R.S. §§ 13–4031 and –4035.

We must answer three questions:

1. Did the trial court err in denying defendant's motion in limine to preclude introduction of the defendant's juvenile record?

2. Was defendant deprived of his Sixth Amendment rights to compel the attendance of witnesses on his behalf or to introduce evidence to establish a defense where, over objections of defendant, defense counsel rested defendant's case without presenting testimony or evidence?

3. Did the trial court err in denying defendant's motion for post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure, 17 A.R.S.?

The facts necessary for a disposition of this appeal are as follows. Defendant Richard Rodriguez was 17 years old when he moved from Santa Fe Springs, California, to live with his aunt and uncle in Green Valley, Arizona. While in California, Richard was under the supervision of the California Youth Authority. His California juvenile records show he was adjudicated a delinquent and spent several months in a juvenile detention center, as the result of an assault with a deadly weapon when he was fourteen years old. His juvenile record also contains other charges which were later dismissed. They include assault with intent to commit murder in August 1974, battery in September 1974, and assault with a deadly weapon in November 1975.

On 4 April 1976, defendant drove with a neighbor from Green Valley to Nogales, Mexico, where he purchased some pills and alcohol. The neighbor testified that upon questioning by a United States customs agent at the border on the return trip, defendant became angry and later stated, "Somebody should blow that guy's head off."

Late that evening, defendant drove to Tucson. He engaged a prostitute at the Manhattan Bar and went with her to the Arizona Hotel to obtain a room. The prostitute signed the registration because defendant was unable to do it himself. They paid the clerk and went upstairs to the room. When defendant did not have the twenty dollars for the prostitute's services, she went back downstairs. Defendant followed and attempted to get a refund for the $4.28 he had paid for the room. The clerk refused, and the manager came out to discuss the matter. An argument began which resulted in defendant firing a series of shots from a .22 caliber pistol, injuring the hotel clerk, the manager, and killing a resident of the hotel.

Defendant then ran out the back door of the hotel and into a parking garage, where he shot at a policeman and an unmarked police car. He was finally shot in the leg by police and apprehended. Defendant had approximately .10 percent of alcohol as well as a significant amount of morphine in his blood at this time. He was also unable to recall the circumstances surrounding the offense. The three psychiatrists who examined defendant at the request of the defendant's attorney testified at defendant's hearing upon sentencing that defendant was substantially mentally impaired at the

---

1. Title 13 citations in this opinion are to the Arizona Criminal Code as it existed prior to its extensive revision effective 1 October 1978.

time of the offense, and that he did not know the nature and consequences of his acts due to generalized, soft brain damage.

Prior to trial, a motion in limine was filed to preclude introduction of any references to defendant's juvenile record. The court denied this motion, and the trial proceeded. No part of the juvenile record was ever introduced.

At trial, sanity was an issue and the facts of the murder were not seriously contested. The State presented its evidence, calling fifteen witnesses over a three day period. Defense counsel vigorously cross-examined all the State's witnesses. After the State rested its case, defense counsel announced that rather than present any evidence on behalf of the defendant, he would also rest his case. Defendant stated in court that he strongly opposed counsel's decision, and submitted a motion to have his attorney dismissed and a new attorney appointed. The court denied that motion. The jury found defendant guilty of first degree murder and four counts of assault with a deadly weapon.

After a mitigation hearing, the trial court sentenced defendant to death for the murder conviction. Defendant was also sentenced to ten to twenty years on each count of assault, to run concurrently. At a resentencing pursuant to *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978), cert. denied 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979), the court found defendant's age to be a mitigating factor and reduced the death sentence for the murder conviction to life imprisonment without possibility of parole for twenty-five calendar years.

## MOTION IN LIMINE

Prior to trial, defendant moved in limine to preclude the State from introducing defendant's juvenile record from California. The court denied the motion stating:

"On the motion in limine to preclude the use of juvenile records, the Court denies that motion. And in denying that motion I'm not denying you leave to make objections in the course of the trial if they are appropriate, but at this time I will not preclude the juvenile records."

During the State's case, no mention was made of defendant's juvenile record.

A motion "in limine" meaning "on or at the threshold; at the very beginning; preliminarily," Black's Law Dictionary, 4th ed., p. 896, West Publishing Company, 1951, is not provided for by name in either our criminal or civil rules of procedure. The motion appears to be frequently used, however, to exclude anticipated prejudicial evidence before the evidence is actually offered by the opposing party. It is apparent that in criminal cases, a "motion in limine" is nothing more than a motion to suppress specifically authorized by Rule 16, Arizona Rules of Criminal Procedure, 17 A.R.S. The trial court treated the motion as such and so will this court on appeal.

In his motion, the defense counsel argued that A.R.S. § 8–207(C) precluded any references to defendant's juvenile record. That statute provides:

"§ 8–207. Order of adjudication; noncriminal; use as evidence

"C. The disposition of a child in the juvenile court may not be used against the child in any case or proceeding in any court other than a juvenile court, whether before or after reaching majority, except in dispositional proceedings after conviction of a felony for the purposes of a presentence investigation and report."

In interpreting this statute, we have held that juvenile records are inadmissible as evidence in chief, *State v. Fierro*, 101 Ariz. 118, 416 P.2d 551 (1966), or as impeachment evidence, *State v. Guerrero*, 58 Ariz. 421, 120 P.2d 798 (1942), in a later criminal proceeding. See Rule 609(d), Arizona Rules of Evidence, 17A A.R.S., and comment following. See also *State v. Councilman*, 105 Ariz. 145, 460 P.2d 640 (1969); *State v. Cano*, 103 Ariz. 37, 436 P.2d 586 (1968).

There are exceptions to this rule. For example, as noted by the statute, juvenile records may be introduced in presentence reports and be taken into consideration by the court in the imposition of sentence. *State v. Fierro*, supra.

A second exception in which courts have allowed juvenile records to be admitted as evidence is where their confidentiality conflicts with constitutional rights. In *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the United States Supreme Court held that confidentiality of a witness' juvenile records must yield to a criminal defendant's Sixth Amendment right to confrontation, entitling the defendant to question the witness regarding his juvenile record. This exception is embodied in Rule 609(d) of the Arizona Rules of Evidence, 17A A.R.S.

■ A third exception occurs when the defendant himself waives their confidentiality by opening the door to his past. Once defendant presents favorable evidence regarding his juvenile history, courts have held that the State could rebut this with evidence of a juvenile record. *State v. Ralls*, 213 Kan. 249, 515 P.2d 1205 (1973); *State v. Marinski*, 139 Ohio St. 559, 41 N.E.2d 387 (1942). A defendant may not use the confidentiality of juvenile records statute for deception. *Marinski*, supra.

■ Here defense counsel had suggested an insanity defense to the State and the court. Where insanity is an issue, all prior relevant conduct of the person's life is admissible into evidence. *State v. Skaggs*, 120 Ariz. 467, 586 P.2d 1279 (1978); *State v. Hudgens*, 102 Ariz. 1, 423 P.2d 90 (1967), cert. denied 389 U.S. 873, 88 S.Ct. 162, 19 L.Ed.2d 155 (1967); *State v. Sexton*, 4 Ariz. App. 41, 417 P.2d 554 (1966).

" * * * where the defendant raises the issue of his sanity, the legal question which the jury must determine is the defendant's responsibility for his conduct at the time the crime was committed. To resolve this vital issue of criminal responsibility it is necessary that the jury have the entire picture of the defendant. Insanity resulting in criminal acts is not a sudden growth even if the prohibited conduct seems to be of a sudden explosive nature. Weihofen, Mental Disorder As A Criminal Defense, p. 323 (1954). The condition of the defendant must be explained to the jury in understandable terms. We

have held that it is always permissible, when searching for the real cause 'to show previous troubles' if it throws light on the act constituting the crime or explains the reason for its commission. * * *" *State v. Griffin*, 99 Ariz. 43, 48–49, 406 P.2d 397, 400 (1965), citing 2 Wigmore, Evidence, § 228.

■ Had defense counsel chosen to present evidence relating to defendant's sanity, he would have opened the door to defendant's past and waived the confidentiality of his juvenile records. The court was therefore correct in her denial of defendant's motion which would have been a blanket preclusion of defendant's juvenile record. As the court pointed out, her ruling did not admit the juvenile records, but merely denied their total preclusion until it became apparent as to the context in which they were to be offered. We find no error in her denial of defendant's motion in limine.

Defendant claims, however, that the court's ruling had a chilling effect upon his constitutional right to put on an insanity defense, citing *State v. Tuell*, 112 Ariz. 340, 541 P.2d 1142 (1975). In *Tuell*, supra, we held that failure of the trial court to grant defendant a motion in limine as to subsequent bad acts was error. In that case, the State had contended that since the defendant did not choose to testify, the inadmissible evidence was not used to impeach him and therefore the issue was moot on appeal. In rejecting this argument, we pointed out that the admission of this improper evidence would have a chilling effect on defendant's exercise of his right to testify because "the admission of the evidence * * would have been so prejudicial as to completely destroy any possible probative value." *Tuell*, supra, 112 Ariz. at 345, 541 P.2d at 1147.

While we agree with the defendant that his juvenile record would have been prejudicial and had a chilling effect upon the decision of the defendant to present evidence in his own behalf, the difference between *Tuell*, supra, and this case is that in this case the juvenile record was admissible

as to defendant's insanity defense. Under these circumstances, even though the possible admission of the defendant's juvenile record did have a chilling effect upon his decision to present testimony in defense, it was not error. Since the defense was insanity, the defendant was faced with the decision of presenting evidence and opening up evidence of his juvenile past, or not and keeping this damaging testimony out. It was a necessary decision which often must be made in criminal trials when considering whether to present further evidence.

## RIGHT TO A DEFENSE

■ The defendant, when he learned that the defense would rest, filed a motion to dismiss counsel. In the motion, the defendant made it clear that he was not waiving counsel stating, "I'm asking the court to remove Robert Norgren; and be replaced by a new attorney." Defendant, thus, wanted to change attorneys in the middle of the trial. Also, defendant did not ask for the right to take the stand and testify which the court would have been required to grant. *State v. Martin*, 102 Ariz. 142, 426 P.2d 639 (1967). At the hearing on the motion, he stated:

> "MR. NORGREN: Yes, Your Honor, the defense rests at this time, Your Honor.
>
> "THE DEFENDANT: I object, Your Honor.
>
> "THE COURT: Let's excuse the Jury now, if we would. (The following proceedings took place outside the presence of the Jury:)
>
> "THE COURT: Mr. Norgren, do you have anything to say?
>
> "MR. NORGREN: No, I haven't.
>
> "THE COURT: Do you have a copy of this?
>
> "MR. NORGREN: Yes, I do.
>
> "THE COURT: Mr. Norgren, Mr. Rodriguez, several times in your motion to me you indicate there is a conflict of interests. What do you feel the conflict is? Mr. Norgren, did you wish to be heard on this?
>
> "MR. NORGREN: I haven't completed reading this, Your Honor.

> "THE COURT: All right. Have you seen a copy of this, Mr. Roll?
>
> "MR. ROLL: Your Honor, Mr. Rodriguez just handed me one a moment ago when I think he approached the bench and handed you one.
>
> "THE COURT: Do you wish to be heard on this, Mr. Norgren?
>
> "MR. NORGREN: I am not sure I know what Mr. Rodriguez is asking in this case. He is asking I am off the case. I don't know if he wants to proceed with the trial at this time or if he wants to ask the Court for a mistrial.
>
> "THE DEFENDANT: I want a new counsel.
>
> "THE COURT: You can't have counsel in the middle of the trial.
>
> "THE DEFENDANT: Then we will have to continue it then.
>
> "THE COURT: We can't do that.
>
> "THE DEFENDANT: I have a right to a proper defense.
>
> "THE COURT: I think you have had very excellent defense, very excellent representation. We can't in the middle of trial change attorneys.
>
> "THE DEFENDANT: That's your opinion about him. I don't want him. I feel just by resting alone on the defense that he doesn't have a proper defense.
>
> "THE COURT: Well, I don't feel as though it is appropriate to change counsel in the middle of the trial. And basically that is what you are asking the Court to do. Did you want to confer further with your client, Mr. Norgren?
>
> *       *       *       *       *       *
>
> "THE COURT: I felt too Mr. Norgren has given you very, very excellent and very competent representation in a very difficult case. And at this point in time I don't think it is appropriate to change counsel or to dismiss counsel. If there is anything else that you want to address to the Court at this time, Mr. Rodriguez, I will ask you if there is anything other than what you have in

your motion that you want to tell the court.

"THE DEFENDANT: I just don't want him, that's all, Your Honor. I feel that just by resting alone at this point that he hasn't, he isn't giving me a proper defense. You heard him a while ago. He stated the defense rests. I object.

"THE COURT: Why do you object?

"THE DEFENDANT: Because he doesn't have no defense.

"MR. NORGREN: Your Honor, I might say I met with Mr. Rodriguez yesterday in the County Jail and I discussed all of these facets with him, and he was agreeable to proceeding in this matter at that time. This is the first notice that I have had since yesterday about his wishes.

"THE COURT: Did you in fact see Mr. Norgren yesterday?

"THE DEFENDANT: I saw him yesterday, but I wasn't agreeable about it. That is his own opinion, because I didn't answer him. I didn't even want to talk to him. I don't want to be near him anymore.

"THE COURT: Well, we don't always have the options to change attorneys at whimsy or whatever, and unless you have some better reason for me than what you have here in a Motion to dismiss counsel, I certainly can see no reason for a mistrial now, and I can see no reason to dismiss your counsel.

"THE DEFENDANT: If you are going to that, I will appeal.

"THE COURT: You can do whatever you want when the trial is over.

"THE DEFENDANT: I don't know other trial.

"THE COURT: If you want to tell the Court or make a record at this time, I would suggest you do so.

"THE DEFENDANT: All he does is lie for me. He is not here. He is out of State somewhere. I, he said he would come and testify. Where is he at? Hidalgo couldn't even identify me. He

doesn't say nothing about—thats a statement that he can't cross-examine. What do you expect me to think?

"THE COURT: The motion for mistrial is denied. The motion to dismiss counsel is denied. We will call the Jury back and excuse them until 1:30, and during the recess of the morning we will then try to settle Jury instructions.

"THE DEFENDANT: I would like to appeal that, special action or something.

"THE COURT: You can do whatever you please. I am not going to restrain you from anything. You can take whatever measures you think are necessary. But you still have counsel, and Mr. Norgren is the counsel. So with this we will call our Jury back long enough to excuse them until settling our instructions."

Nowhere in the motion or in defendant's statements in court did the defendant indicate who he wanted to call in his defense. Although the defendant did not specifically claim he was granted ineffective assistance of counsel,[2] the trust of his motion seems to be that his counsel was not competent. We do not agree with this contention.

■ In general, the power to control trial strategy belongs to counsel. *Townsend v. Superior Court*, 15 Cal.3d 774, 126 Cal.Rptr. 251, 543 P.2d 619 (1975); *Herrera v. Wilson*, 364 F.2d 798 (9th Cir. 1966).

"[I]t is well established that the accused is bound by the trial strategy, misconduct and mistakes of counsel so long as counsel's assistance at trial was not reduced to a mere 'farce or sham.' (citations omitted) *State v. Jones*, 110 Ariz. 546, 550, 521 P.2d 978, 982 (1974)." *State v. Farni*, 112 Ariz. 132, 133, 539 P.2d 889, 890 (1975). See also *Faretta v. California*, 422 U.S. 806, 813, 95 S.Ct. 2525, 2530, 45 L.Ed.2d 562, 568, fn. 8 (1975); *Morse v. People*, 501 P.2d 1328 (Colo.1972).

There are cogent reasons for this rule. In its lengthy discussion of this issue, the Alaska Supreme Court articulated several:

**2.** The trial court initially interpreted defendant's objection to Mr. Norgren's decision not to

present evidence as such a claim and rejected it.

"First, the attorney acts on behalf of his client, and his actions are calculated to achieve the result which his client seeks. The attorney, moreover, is the expert—not the client. Short of outright incompetence, the attorney's actions must be considered as being in the best interests of his client.

\*    \*    \*    \*    \*    \*

"Second, there is a strong interest in promoting the efficient administration of justice. Any rule of law which would operate to frustrate this policy would be a disservice to the courts, attorneys, and ultimately to the litigants—including criminal defendants—who appear in court. It might be feared that a rule requiring an attorney to consult with his client before the client's rights may be waived would unduly interfere with trials. Not only would it hamper the attorney, it might force the trial judge to interrupt the proceedings whenever a waiver might be occurring in order to protect the record on appeal. If the judge did not do so, the defendant could later challenge his conviction by asserting that he had not consented to the waiver. In addition, such a procedure would distract and confuse a jury. If carried far enough, it could not only slow a trial to a snail's pace, but it might also involve the judge in the conduct of the defense to an unacceptable degree." *Lanier v. State*, 486 P.2d 981, 986–87 (Alaska 1971).

The United States Supreme Court in considering whether counsel's waiver of constitutional rights would later bar defendant's habeas relief indicated that the defendant is bound by counsel's trial strategy except where the circumstances are exceptional. *Henry v. Mississippi*, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965). See *State v. Martin*, 102 Ariz. 142, 426 P.2d 639 (1967).

The United States Court of Appeals for the Fifth Circuit has stated, regarding the "exceptional circumstances" test established in *Henry*, supra, in a case where counsel deliberately waived the right to object to the racial composition of the grand jury, that:

"The effect of this waiver was not vitiated by the attorney's failure to consult with Winters about the constitutional objections to the jury composition. As *Fay* [*v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837] points out '[a] choice made by counsel not participated in by the petitioner does not automatically bar relief.' 372 U.S. at 439, 83 S.Ct. at 849. The implication of this last statement—that some strategic decisions which entail the waiver of a constitutional right may be made by counsel without consultation with the accused—was made express in *Henry v. Mississippi*, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965). \* \* \* *Henry* requires inferior federal courts to determine whether the circumstances of a particular case are in the *exceptional* category from which the bar of waiver, created by the good faith actions of a criminal defendant's attorney, has been lifted.

\*    \*    \*    \*    \*    \*

" \* \* \* To require an explanation of only the most important rights which arise during the course of a trial, with the advantages and disadvantages of raising each issue, in terms that would enable a defendant to make an intelligent and knowing waiver creates a heavy enough burden for both clients and lawyers. We refuse to enlarge the attorney's duty to include the responsibility to inform the defendant of every possible constitutional claim. \* \* \* " *Winters v. Cook*, 489 F.2d 174, 176–77 (5th Cir. 1973).

■ In the instant case, it would appear that counsel did discuss this matter with the defendant and thought there was agreement on the proposed trial strategy. Although it is not clear exactly who defendant wanted to be called, it is clear he objected at the time to his counsel's decision to rest without calling any witnesses.

The defendant did not insist on exercising his right to take the stand and testify in his own behalf. He did not indicate any witnesses he wished to call. There is no indication that counsel had not properly prepared his case. Indeed, it would appear that de-

fendant's counsel was well prepared and had considered all the options and had discussed them with the defendant. The only question we have here is whether the defendant's attorney, over the objection of defendant, as a trial strategy, could decide not to call any witnesses after the State had rested. We think he could. We find no error.

### POST–CONVICTION RELIEF

While the conviction was on appeal, the defendant filed a petition for post-conviction relief on 14 March 1978, and the appeal was stayed pending the determination of post-conviction relief. In addition to raising numerous issues concerning the sentence and the imposition of the death penalty, which we do not need to consider here, the petition raised the same issues that have been raised on this appeal. It is apparent that the petition was filed in aid of the appeal in the hopes that additional evidence could be obtained in support of the allegations made by defendant on appeal.

A pre-hearing conference was held pursuant to Rule 32 at which time the trial court determined that "the record is sufficient for appellate review," and denied the motion for a Rule 32 hearing, and further denied the defendant's petition for post-conviction relief. The defendant petitioned this court for review of the denial of post-conviction relief which petition was, pursuant to Rule 31.4(b)(2) of the Arizona Rules of Criminal Procedure, 17 A.R.S., consolidated with the appeal.

We have reviewed the petition for review of the denial of the petition for post-conviction relief pursuant to Rule 32, and believe that the petition for review of the Rule 32 hearing should be denied.

Judgment affirmed.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and HAYS and GORDON, JJ., concur.