586 P.2d 1279

**STATE of Arizona, Appellee,**

v.

**Paul Steven SKAGGS, Sr., Appellant.**

**No. 3782.**

Supreme Court of Arizona,
In Banc.

Nov. 16, 1978.

Bruce E. Babbitt, former Atty. Gen., John A. LaSota, Jr., Atty. Gen. by William J. Schafer, III, and R. Wayne Ford, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Terry J. Adams, Deputy Public Defender, Phoenix, for appellant.

HOLOHAN, Justice.

Paul Skaggs was tried and convicted of first-degree murder and sentenced to confinement for twenty-five years to life. A timely appeal was filed.

The evidence at trial disclosed that on July 4, 1976 Wayne Norris, a neighbor of the defendant, introduced the defendant to the deceased, Frank Wright. Norris was aware that Wright was a homosexual, and Norris suggested that the defendant become friendly with Wright. The defendant was opposed to the idea of forming any friendship with Wright. Norris, however, succeeded in getting the defendant to talk to Wright.

Norris left the defendant with Wright at the latter's mobile home. Wright made homosexual advances to the defendant, but he rebuffed Wright, telling him he was not attracted to men. Wright suggested that the defendant enter into a relationship with him. The defendant told Wright to remain in the trailer, that he was going to do a "big favor" for Wright. The defendant obtained a pistol from his truck, returned to the mobile home, and shot Wright twice in the head and once in the chest.

The defendant waited at the mobile home for approximately 30 minutes and during this time he moved the body to the back bedroom and unscrewed all the lights in the trailer as he could not find all the light switches. Thinking that a darkened trailer might look suspicious he relit the light bulb in the living room area.

The defendant then left for home and on the way disposed of the empty cartridges. Norris returned to Wright's mobile home and found blood splattered on the sofa. He called the police.

The police found the body of Wright. Norris furnished the police with information which led to the arrest of the defendant at his home. After being advised of his rights the defendant admitted that he had committed the murder. The defendant stated to police officers that at the time of the incident he had heard an inner voice telling him that it was the will of God that he should shoot Mr. Wright.

At trial the defendant raised the issue of insanity and in support of this defense two expert witnesses were called. Both experts testified that the defendant was legally insane at the time of the killing. The state also called an expert witness who testified that defendant was suffering from a mental disorder but the defendant knew what was right and wrong and that he knew the nature and quality of his acts.

The defendant raises numerous issues which have, for the sake of clarity, been combined and considered in appropriate divisions.

## VOIR DIRE

Appellant complains that the trial court refused to ask proposed questions covering: 1) religious bias; 2) courtroom experience of jurors; 3) jurors' general prejudice; 4) jurors' opinions formed from evidence outside courtroom; 5) bias toward psychiatric testimony and the insanity defense, and 6) bias toward homosexuals. Except for religious bias each of these broad categories was substantially covered by questions propounded by the trial court.

The scope of the voir dire examination is left to the sound discretion of the trial court, and review of the actions of the trial court is limited to determine whether there was an abuse of that discretion. *State v. Melendez*, 121 Ariz. 1, 588 P.2d 294 (1978); *State v. Smith*, 114 Ariz. 415, 561 P.2d 739 (1977). In reviewing the record, we find no abuse of discretion in the refusal of the trial judge to ask the voir dire questions submitted by the defense.

Appellant urges that he was denied due process by the refusal of the trial court to ask voir dire questions concerning religious bias. It is appellant's position that his defense of insanity was based on his being a religious person who had been told by God to commit the act charged. Appellant sought to determine whether the jurors had any "feelings" or bias against various religions.

While appellant urges that the trial court failed to make inquiry into the area of religious bias, we find nothing in the record which shows that counsel for the defense was prevented from asking voir dire questions in this area. It is true that the trial judge stated:

"I want to tell you something right now about this division of the Superior Court. . . . I will conduct the voir dire of this jury almost 99 percent, and when I get through, there will be very little to ask." (RT, Vol. I, p. 10)

The record also indicates that the trial judge did permit counsel to direct voir dire questions to the panel.

"THE COURT: Mr. Munger, the state may examine the panel collectively on matters not heretofore covered individually where you feel appropriate."

After completion of a short examination by the state, the defense was given a similar opportunity to address voir dire questions to the panel, and a very short examination was conducted. At the conclusion of the defense examination the trial judge inquired of the defense:

"THE COURT: Defendant pass the panel?

"MR. SCHWARTZ: Yes, Your Honor.

"THE COURT: Very well."

■ Unless there is timely objection to the action of the trial court, the matter will not be considered on appeal. *State v. Richmond*, 114 Ariz. 186, 560 P.2d 41 (1976).

Counsel points out that objection was made to the refusal of the trial court to ask certain questions of the panel that had been ruled upon by another judge prior to assignment of the case to the judge who tried the case. The record does show that another judge was assigned the case for a period of time, and that judge reviewed the defense proposed voir dire questions, noting the questions which would be asked and those which would not be asked. As we understand appellant's position, it is his contention that the trial judge erred in not following the ruling of the previous judge. *See* 17 A.R.S. Rules of Criminal Procedure, rule 16.1(d).

■ Settlement of voir dire questions is not the type of pretrial ruling covered by Rule 16.1(d). As the other provisions of Rule 16.1 indicate, the matters included are those involving defenses, objections, requests, and motions pretrial in nature. The trial judge in this case was not bound by the rulings of the previous judge. The trial

judge has the responsibility for determining the extent of voir dire. *See* 17 A.R.S. Rules of Criminal Procedure, rule 18.5.

■ Due process would require an examination by the trial judge on an issue if there was a nexus shown between the prejudice feared and the issues of the case. *See Ristaino v. Ross*, 424 U.S. 589, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976). In this case there was no showing of any community bias or "feeling" about religion. Religion, as such, was never an issue in the case. Medical witnesses describe the defendant as a religious person. The defense claimed that the defendant acted as he did because he believed God had told him to so act. We find no connection with the prejudice feared and the issues of the case.

■ It is clear that in at least one instance the trial judge did specifically rule out an area of voir dire for counsel. The trial judge ruled that neither he nor counsel would be permitted to ask the jury panel what they thought would occur if a jury returned a verdict of not guilty by reason of insanity. Appellant challenges this ruling.

Appellant's position is without merit because this court has on at least three occasions ruled that there is no error in the trial court's refusal to instruct a jury on the consequences of a finding of not guilty by reason of insanity. *State v. Doss*, 116 Ariz. 156, 568 P.2d 1054 (1977); *State v. Jensen*, 111 Ariz. 408, 531 P.2d 531 (1975); *State v. Peats*, 106 Ariz. 254, 475 P.2d 238 (1970). We hold that the same principle applies to voir dire examination. The ruling of the trial judge was not error.

## PRIOR BAD ACTS

■ Defendant complains that testimony by the state's psychiatrist of the defendant's previous criminal behavior should not have been admitted. Generally, evidence of crimes other than those for which defendant is on trial is not admissible. *See State v. Wirtanen*, 117 Ariz. 129, 571 P.2d 275 (1977); *State v. Tostado*, 111 Ariz. 98, 523 P.2d 795 (1974). However, these rules do

not apply when defendant raises the issue of insanity. Since he is permitted to disclose his personal history and is not restricted to any particular acts or conduct for the purpose of showing he was insane, the state may also explore the same area and present evidence not disclosed by the defendant which may be relevant to prove the defendant's sanity. Thus, previous conduct involving prior bad acts when the issue of insanity is raised by the defendant is admissible. *Burgunder v. State,* 55 Ariz. 411, 103 P.2d 256 (1940); *State v. Odell,* 38 Wash.2d 4, 227 P.2d 710 (1951); 20 Am.Jur.2d *Evidence* § 353 (1967).

▮ The psychiatrists for the defense had testified concerning incidents in appellant's life showing his tendency to violence. The state posed a hypothetical to its expert which included the acts testified by defense witnesses and an additional act of violence. The state's psychiatrist testified that considering all the acts the appellant was nevertheless legally sane. We find no error in receipt of the evidence.

▮ The state's psychiatrist also testified that appellant's condition involved alcoholism and drug habituation. The state contends that this evidence was admissible to show that the defendant's past conduct was not due to his mental illness. It was offered to rebut the defense theory that the episodes from the defendant's past were caused by his mental illness. Under the broad area allowed when insanity is an issue, the testimony was admissible as bearing on the appellant's mental condition.

## PRESUMPTION OF MALICE

▮ Defendant contends that the trial court's instruction that the use of a deadly weapon in the act of killing is some evidence of malice constitutes a comment on the evidence in violation of Ariz.Const. art. 6 § 27. The instruction is not a comment on the evidence. It has been held that commenting on the evidence involves an expression of opinion. Here there was no expression of opinion.

▮ The trial court's instruction that the use of a deadly weapon in the act of killing is some evidence of malice must be

considered together with all the other instructions. There is a long line of cases from this jurisdiction which hold that there is a presumption of malice from the use of a deadly weapon in a killing done without circumstances of mitigation, excuse or justification. *State v. Brierly,* 109 Ariz. 310, 509 P.2d 203 (1973); *State v. Preis,* 89 Ariz. 336, 362 P.2d 660 (1961); *Macias v. State,* 36 Ariz. 140, 283 P. 711 (1929); *Bennett v. State,* 15 Ariz. 58, 136 P. 276 (1913); *Halderman v. Territory,* 7 Ariz. 120, 60 P. 876 (1900). The questioned instruction without reference to the other instructions does not refer to mitigation, excuse, or justification in the use of a deadly weapon, but by reading the instructions as a whole we believe the modification was covered by the other instructions. The form of instruction used by the trial judge is not recommended for future use.

▮ Appellant also argues that the trial court's instruction regarding intent and intoxication constituted reversible error because the first sentence of the instruction would confuse the jury in deciding whether they could consider a lesser included offense. The instruction given by the trial court was:

"No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But when the actual existence of any particular purpose, motive or intent is a necessary element to constitute any particular species or degree of crime, you may take into consideration the fact that the accused was intoxicated at the time in determining the purpose, motive or intent with which he committed the act." (RT, Vol. IV, p. 668)

Appellant urges that the Recommended Arizona Jury Instruction, Criminal Standard No. 5 was proper. Recommended Arizona Jury Instruction, Criminal Standard 5 provides:

"An act done by an intoxicated person may still be a crime. However, for the crime of murder, the state must prove *intent* to murder. You may consider the fact that he was intoxicated at the time

in determining whether the defendant could intend to murder."

We believe that both instructions are substantially the same. The one given by the trial court is taken from the statute A.R.S. § 13–132. We find no basis for appellant's claim of confusion.

## VOLUNTARY MANSLAUGHTER

■ Defendant urges that we apply a subjective test to determine provocation in instructing the jury on the elements of voluntary manslaughter. We decline to do so. It has long been recognized in this jurisdiction that provocation must be judged by a reasonable man standard. *State v. Harwood*, 110 Ariz. 375, 519 P.2d 177 (1974); *State v. Michael*, 103 Ariz. 46, 436 P.2d 595 (1968).

## INSANITY DEFENSE

■ Defendant contends that the knowledge requirement of the insanity defense should encompass only a moral wrong. In Arizona we have long upheld the M'Naghten rule of insanity.* In addition we have held that knowledge of wrong in the M'Naghten test involves both a legal and moral wrong. *See State v. Malumphy*, 105 Ariz. 200, 212, 461 P.2d 677, 689 (1969) (McFarland, J., concurring). In the instant case defendant stated that he heard an inner voice and that he felt it had directed him to shoot Mr. Wright. From defendant's statement it is possible to infer that the defendant believed he was morally justified in shooting Mr. Wright. Yet defendant also stated that he left the door ajar because he believed the sound of the gunshots would be muffled by the fireworks set off by the Fourth of July celebration. In addition he stated that he illuminated one of the lights because he felt a darkened trailer would look suspicious. These statements tended to show that the defendant knew that his acts were legally wrong and that he should take steps to prevent apprehension. Because we must view the evidence in a light most favorable to the ver-

dict, *State v. Bradley*, 99 Ariz. 328, 409 P.2d 35 (1965); *State v. Bearden*, 99 Ariz. 1, 405 P.2d 885 (1965), we find that the evidence supported the jury's determination that defendant was aware that his acts were legally wrong. *See State v. Malumphy, supra.* Defendant also suggests that a person's knowledge that his act is "wrong" should be defined as "wrong" by defendant's personal beliefs rather than "wrong" as defined by a community standard. We have specifically held that "wrong" should be judged by a community standard. *See State v. Corley*, 108 Ariz. 240, 495 P.2d 470 (1972).

Defendant also urges that we adopt a test for insanity found in the Model Penal Code. We have specifically rejected the Model Penal Code test. *See State v. Malumphy, supra; State v. Schantz, supra.*

## SUFFICIENCY OF THE EVIDENCE

■ Finally defendant urges that the weight of the evidence did not support a finding of premeditation. Appellant contends that he was unable to exercise careful thought in weighing of the considerations for and against his proposed course of action because of his mental condition. We find appellant's argument totally without merit. The evidence showed that the defendant told the victim to wait in his trailer. The defendant went outside to his pickup, obtained his pistol, and returned to the trailer. Before re-entering the trailer he considered the possibility that the sound of gunshots would be muffled by the Fourth of July fireworks. We believe that there was ample evidence to support a finding of premeditation.

Judgment affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and GORDON, JJ., concur.

* An accused must have had at the time of the criminal act:

   1. Such a defect of reason as not to know the nature and quality of the act or

   2. That if he did know it, that he did not know what he was doing was wrong.
*See State v. Schantz*, 98 Ariz. 200, 403 P.2d 521 (1965).