636 P.2d 628

**STATE of Arizona, Appellee,**

v.

**Richard Bud BRITSON, Appellant.**

**No. 4056.**

Supreme Court of Arizona,
In Banc.

Oct. 14, 1981.
Rehearing Denied Nov. 24, 1981.

Robert K. Corbin, Atty. Gen., William J. Schafer, III, Chief Counsel, Crim. Div., Gerald R. Grant, Asst. Atty. Gen., Phoenix, for appellee.

Charles L. Weninger, Tucson, for appellant.

GORDON, Justice:

On June 29, 1977, appellant Britson was convicted of first-degree murder, armed kidnapping with a prior felony conviction, and armed burglary with a prior felony conviction. Subsequent to an aggravation-mitigation hearing, he was sentenced to death for the first-degree murder charge on October 24, 1977, and given concurrent sentences of 20 to 60 years on the armed kidnapping charge and 10 to 20 years on the armed burglary charge. Appellant was re-sentenced to death on the charge of first-degree murder on March 27, 1979, after a hearing on a petition for post-conviction relief. From these judgments and sentences, he appeals. We have jurisdiction pursuant to A.R.S.Const. Art. 6, § 5(3) and A.R.S. § 13–4031. We affirm.

## FACTS

The testimony elicited at trial tended to show the following. On July 25, 1977, due to appellant's inability to pay rent, his wife moved into a trailer with two other men, Chapman and Anderson. Appellant had not objected to this living arrangement initially, and he often visited his wife at this trailer. Sometime after appellant's wife moved into the trailer, she began having sexual relations with Anderson. She refused on at least two occasions to return to living with appellant and on several occasions indicated she wanted a divorce. On August 25, 1977, appellant arrived at the trailer carrying a six-pack of beer and a brown paper sack, which he told his wife contained beans. He was met at the door by Anderson, who was holding a knife in his right hand. At appellant's request, Anderson put the knife down. Appellant sat down on a couch with his wife and placed the brown paper sack underneath an adjacent rollaway bed. He, his wife, and Anderson sat together for some time, drinking beer and talking. At some point, appellant went to the bathroom, taking his sack with him, and emerged with a gun. He told

Anderson, "You might have a knife, but I got a gun." Appellant then shot and killed Anderson. Appellant's wife suggested they call the police and an ambulance, but appellant refused. He forced his wife to accompany him to a Tucson hotel, where they stayed until August 29, 1977, when appellant turned himself in to the police.

## EFFECTIVE ASSISTANCE OF COUNSEL

The argument appellant pursues most vigorously is that he was denied his right to effective assistance of counsel because his attorney failed to prepare properly for trial. As we noted in *State v. Marquez*, 127 Ariz. 98, 618 P.2d 592 (1980), we have not retreated from the rule that a conviction will be reversed because of ineffective assistance of counsel only if "the representation by a defendant's lawyer was so ineffective that the proceedings were reduced to a farce, sham or mockery of justice." *State v. Williams*, 122 Ariz. 146, 150, 593 P.2d 896, 900 (1979). As *Williams* noted, this standard has come under increasing attack. The Ninth Circuit Court of Appeals, for example, has recently concluded "that the 'farce and mockery' standard has been outmoded" and held "that the Sixth Amendment requires that persons accused of crime be afforded reasonably competent and effective representation." *Cooper v. Fitzharris*, 586 F.2d 1325, 1327, 1328 (9th Cir. 1978), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979). Whether we scrutinize counsel's representation in the case before us by the standard of "farce, sham or mockery of justice" or by a standard such as "reasonably competent and effective representation" advanced by the Ninth Circuit, we conclude that appellant was provided effective assistance of counsel.

We observed in *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978), *cert. denied*, 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979), that when a trial is not on its face a sham or farce, "in order to show that the preparation for an otherwise adequate trial was insufficient, defendant had to show that counsel's failure to investigate resulted

in not presenting evidence or interposing a defense which would have made a crucial difference at the trial." 120 Ariz. at 450, 586 P.2d at 1262. Similarly, the Ninth Circuit held in *Cooper, supra,* that "[w]hen the claim of ineffective assistance of counsel rests upon specific acts and omissions of counsel at trial * * * relief will be granted only if it appears that the defendant was prejudiced by counsel's conduct." 586 F.2d at 1331. Appellant has pointed us to nothing demonstrating that he was prejudiced by purported deficiencies in his counsel's representation.

Appellant claims he was denied effective representation of counsel based on the following: (1) Reconstruction of the scene of the crime, which was important to lend credibility to appellant's testimony, was not begun until five days after trial began and then was done by an unqualified expert; (2) No pretrial determination was obtained as to whether appellant could explain his prior convictions; and (3) Counsel's preparation for trial was, appellant contends, generally inadequate.

■ A review of the record discloses that the trial court recognized as qualified the expert used to reconstruct the scene. The fact that the reconstruction was not begun until five days after trial began did not by itself prejudice appellant. No showing has been made that the delayed reconstruction prevented the presentation of any evidence or defense that would have made a crucial difference to the outcome of appellant's trial.

■ Defense counsel's failure to move in limine to allow appellant to give mitigating explanations regarding his prior felony convictions cannot have been prejudicial. The trial judge excluded such explanations in reliance on *State v. Pavao,* 23 Ariz.App. 65, 530 P.2d 911 (1975), which clearly holds that such explanations are disallowed. There is no reason to believe that the trial judge would have made a different decision regarding their admission had the question come up before trial instead of during trial.

■ Appellant argues that if his counsel knew before trial that appellant would not be allowed to explain the prior convictions, he should have moved to preclude the state from using the prior convictions to impeach appellant's credibility. Before appellant testified at trial, his attorney moved in limine to preclude the prosecutor from impeaching appellant's credibility with any prior convictions other than the two from Illinois and one from Minnesota which were included in the charges against appellant. Defense counsel further challenged the Minnesota conviction on the grounds of an incomplete record. He did not otherwise seek to preclude use of the Illinois and Minnesota convictions for purposes of impeachment.

We find appellant's argument that his trial counsel should have moved to exclude evidence of all of appellant's prior convictions for impeachment purposes to be persuasive. Appellant has failed to indicate, however, how this flaw in his counsel's representation prejudiced him, *see Cooper, supra,* or "made a crucial difference to the case at the trial," *Watson,* 120 Ariz. at 450, 586 P.2d at 1262. At the time of appellant's trial, the admissibility of prior convictions for impeachment purposes was controlled by *State v. Domme,* 111 Ariz. 464, 532 P.2d 526 (1975), which held that admissibility was "left to the sound discretion of the trial judge whose decision will not be overturned in the absence of an abuse of discretion." *Id.* at 465–66, 532 P.2d at 527–28. We find no indication in the record, nor does appellant assert, that had appellant's counsel moved to exclude use of the Illinois and Minnesota convictions for impeachment purposes, the trial court would have granted such a motion.

■ Finally, appellant criticizes in general his counsel's preparation for trial. He alleges that defense counsel failed to adequately interview vital witnesses prior to trial, that defense counsel failed to prepare properly for cross-examination of some witnesses and in general prepared inadequately for trial. Although appellant alleges many deficiencies in his counsel's pretrial prepara-

tion, he fails to show how defendant may have been prejudiced by any purported shortcomings. Absent a demonstration of prejudice to defendant due to his counsel's preparation for trial, we will not find that prejudice occurred. We find defendant was not deprived of his right to effective counsel.

### DELETIONS FROM TAPE–RECORDED STATEMENTS

■ When appellant turned himself in to the South Tucson Police Department, he gave two tape-recorded statements in which he admitted shooting Anderson and claimed he did so in self-defense. During these statements, appellant offered on several occasions to take a lie-detector test to prove he was telling the truth. On the day trial began, the state moved to exclude testimony regarding offers by the defendant to take a polygraph test. The trial court granted the state's motion with the exception that the state was prohibited from deleting from appellant's tape-recorded statements remarks concerning his willingness to take a lie-detector test.

The state petitioned the Court of Appeals, Division Two, to reverse the lower court order. In response, the Court of Appeals issued an order directing the trial court to grant the state's motion to delete the portions of appellant's statements relating to his willingness to submit to a lie-detector test. Appellant contends the Court of Appeals erred in issuing such an order.

Appellant cites *United States v. Wenzel*, 311 F.2d 164 (1962), for the proposition that when a defendant's confession is introduced into evidence, it is the defendant's right to have all of it, not just part of it, introduced. McCormick explains that this right to introduce the remainder of a statement or confession "is subject to the qualification that where the remainder is incompetent, not merely as to form as in the case of secondary evidence or hearsay, but because of its prejudicial character then the trial judge should exclude if he finds that the danger of prejudice outweighs the explanatory value." McCormick on Evidence § 56, at 131

(2d ed. E. Cleary 1972); *see* 29 Am.Jur.2d *Evidence* § 599 (1967).

As the Court of Appeals observed in its order, "it is well-settled in this jurisdiction that lie detector evidence is admissible only by stipulation, *State v. Goldsmith*, 112 Ariz. 399, 542 P.2d 1098 (1975), and evidence of a defendant's willingness to take a lie detector test is not admissible. *State v. Forgan*, 104 Ariz. 497, 455 P.2d 975 (1969)." We agree with the Court of Appeals that appellant's offers to take a polygraph test, clearly inadmissible on their own, do not become admissible because included in appellant's taped confession, part of which was introduced at his trial.

### PROSECUTORIAL MISCONDUCT

■ Following the above Court of Appeals order, both the prosecutor and defense counsel requested and obtained additional deletions from the tapes and transcripts of appellant's statements given at the time he turned himself in to the South Tucson Police Department. In questioning Detective Brokken about the circumstances surrounding the taking of the statements, the prosecution elicited the following testimony:

"Q. And during this entire interview did you keep the tape recorder running?

"A. During which interview; we had two.

"Q. The first interview.

"A. Yes.

"Q. And the second interview?

"A. Yes.

"Q. And why did you keep the tape recorder running during both interviews?

\* \* \* \* \* \*

"[A] Because we record the conversations that we have with people.

"Q. \* \* \* Whether they turn out good or bad?

"A. That's correct."

The day following the above testimony, the prosecutor played the tapes, with the court-ordered deletions, of appellant's statements for the jury. Prior to playing the tapes, the prosecutor brought out the fact

that excisions had been made from the tapes by questioning Detective Coronado as follows:

"Q. Is 40 a copy of a conversation that you and Detective Brokken had with Richard Britson on the 29th?

"A. Yes, it is.

"Q. This is a copy of the original except for certain deletions that I had you take out?

"A. That's right.

"Q. I show you 41 for identification.

"A. That's a copy of the last statement that was taken on August 29th when we were interviewing Mr. Britson.

"Q. Is that an accurate copy of the original except for the deletions that I had you take out?

"A. Yes, it is."

In addition, the trial court admonished the jury as follows:

"Ladies and gentlemen of the jury, when you hear the tape recordings, Exhibits 40 and 41, it will probably be obvious to the jury that there have been some erasures made and some matters taken out of the tape and the witness has testified to that.

"These deletions were made under the order of the Court and the fact that the deletions were made and what is deleted is no concern to the jury. You're not to discuss it in any way or wonder what was taken out. Thank you."

In closing argument, the prosecutor commented on the conduct of the police detectives who took appellant's statements. He argued in part:

"If they get a little rough, what's that got to do with the guilt or innocence of the defendant? You have to decide whether the statement was voluntary, if there were any promises. But these officers were honest enough to keep the tape recorder on, and they indicated that they did keep it on when it helped them and they did keep it on when it hurt them."

Appellant argues that the prosecutor acted improperly because he either deliberately lied to the jury by stating, or at least misled

them by implying, that the tapes of appellant's statements which they had heard were complete when in fact deletions had been made. We disagree. We feel that the combination of the above testimony, admonitions, and argument leaves a clear impression that deletions had not been made by the police detectives while recording appellant's statements but had later been made upon order of the court from the copies of the tapes played for the jury. We find no prosecutorial misconduct.

## IMPROPER JURY INSTRUCTIONS

■ Appellant next contends that the trial court erred by giving jury instructions that commented on the evidence in violation of Article 6, § 27, of the Arizona Constitution. A comment on the evidence in violation of Article 6, § 27, has been defined as an expression of an opinion on the evidence. *State v. Skaggs,* 120 Ariz. 467, 586 P.2d 1279 (1978); *State v. Barnett,* 111 Ariz. 391, 531 P.2d 148 (1975). We find no expression of the trial court's opinion in any of the challenged instructions.

■ In addition, appellant claims that the following instruction violates our holding in *State v. Jackson,* 94 Ariz. 117, 382 P.2d 229 (1963):

"You have been instructed that a person who is without fault has no duty to retreat; however, if you find that such person did in fact retreat and further if you find that such person did in fact reach a place of safety, and further if you find that such person did then voluntarily return to the danger from which the retreat was made, and a killing then resulted, you are instructed that such person is not justified under the law of self defense to commit such act of killing, if his return was deliberately calculated to lead to further conflict."

*Jackson* held that the refusal of the trial court to give an instruction that retreat is not required before one may act in self-defense was error on the facts of the case before it. There, a man who had been in an altercation in a clubroom with another man left and returned with a gun. This Court

held that the act of returning to the club-house did not by itself deprive the defendant of his self-defense claim. We explained that "[b]efore an act may cause forfeiture of the fundamental right of self-defense it must be willingly and knowingly calculated to lead to conflict." 94 Ariz. at 122, 382 P.2d at 232.

The challenged instruction above is in harmony with our holding in *Jackson* because it provides in essence that once having retreated from a place of danger, an act of voluntarily returning which is deliberately calculated to lead to further conflict deprives the defendant of his claim of self-defense. Further, the trial court in this case, unlike the court in *Jackson*, did give an instruction that the defendant was not required to retreat before he could lawfully act in self-defense. Included in the jury instructions in the case at bar was the following:

"The defendant does not have to retreat before he may lawfully act in self-defense. The rule as to retreat applies even if it appears that safety might more easily have been gained by withdrawing from the scene by flight.

"When a person, being without fault, and in a place where he has a right to be, is violently assaulted, he may, without retreating, repel force by force; and if, in the reasonable exercise of self-defense, his assailant is killed, the defendant's act is justified.

"When a person is in a place where he has a right to be, he is not obliged to retreat to the wall, but may stand his ground and kill his assailant to avoid death or great bodily harm.

"Fault, as used in this instruction, implies misconduct, not lack of judgment. One who merely does an act which affords an opportunity for conflict is not thereby precluded from claiming self-defense."

We feel that the jury was fully and correctly instructed on the issue of retreat in connection with self-defense. We find no impropriety in the jury instructions challenged by defendant.

1. Former A.R.S. § 13–491 was replaced by current A.R.S. § 13–1304 effective October 1, 1978.

## REFUSAL OF APPELLANT'S RE-QUESTED INSTRUCTIONS

■ Appellant next claims that the trial court erred by refusing to give his following requested instruction: "If you determine that the Defendant used a deadly weapon in the killing, and no circumstances in mitigation, justification or excuse appear, you may find malice." The court instead instructed the jury, "If you determine that the defendant used a deadly weapon in the killing, you may find malice." In *State v. Skaggs*, 120 Ariz. 467, 586 P.2d 1279 (1978), we disapproved for future use the form of instruction used here by the trial court. Because *Skaggs* was decided after the trial in this matter, the trial court did not have the benefit of Skaggs' admonition. We reiterate our disapproval of the instruction given without defendant's requested modification. By reading the instructions as a whole, however, we believe that the omitted language was covered by the other instructions. *See Skaggs, supra.*

■ Appellant's final attack on the jury instructions is that the trial court failed to use his following requested instruction:

"A husband and wife have a legal duty to reside together. Therefore, if it is alleged that one spouse has kidnapped the other, the lack of consent of the alleged victim must have been manifested or demonstrated to the defendant unless it appears to you, under all the circumstances, that the alleged victim reasonably believed that such a manifestation or demonstration would result in bodily harm."

A trial court need not give requested instructions which are incorrect statements of the law. *State v. Denton*, 101 Ariz. 455, 420 P.2d 930 (1966). Appellant has cited no cases, nor has our research disclosed any, that suggest the above instruction is a correct theory of the law. Nor does his argument find support in former A.R.S. § 13–491 [1] for which he was charged. The pertinent portion of that statute provides: "A.

A person is guilty of a felony who: (1) Forcibly steals, takes or arrests any person in this state, and carries him into another country, state or county, or into another part of the same county." We perceive no requirement that the state prove that the victim expressed his or her lack of consent to the kidnapper.

█ Appellant seems to be contending that consent to be taken should be implied or presumed from a marital relationship and so must be expressly denied by a spouse victim. Even assuming, arguendo, that a presumption of consent exists within a marital relationship, such a presumption would not exist on the facts of this case, where appellant admitted that his wife was living in a trailer with two other men and had refused on two occasions to return with him to the marital domicile.

Further, we feel that the trial court adequately instructed the jury as to consent with the following language:

"When one in the exercise of his own free will, and with knowledge of what is taking place with respect to his person, voluntarily and willingly consents to accompany another, the latter cannot be guilty of kidnapping the former as long as such condition of consent exists."

We find no error in refusing appellant's requested instruction.

## CONSTITUTIONALITY OF THE DEATH PENALTY

Appellant further contends the death penalty imposed by § 13–454, as construed by *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978), *cert. denied*, 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979), and *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978):

(1) violates the separation of powers clause of the Arizona constitution because it constitutes judicial legislation;

(2) violates the due process clause because it is vague, thereby allowing arbitrary infliction of the death penalty;

(3) voids the legislature's intent that all defendants sentenced to death be resen-

tenced to life imprisonment if the death penalty is held unconstitutional;

(4) is unconstitutional because the mitigation provisions were not severable from the rest of the statute;

(5) violates the ex post facto clauses of the Arizona and United States constitutions; and

(6) violates the double jeopardy clause of the United States Constitution.

We have been presented with these arguments numerous times and have consistently rejected them. *See State v. Schad*, 129 Ariz. 557, 633 P.2d 366 (1981); *State v. Greenawalt*, 128 Ariz. 150, 624 P.2d 828 (1981); *State v. Jordan*, 126 Ariz. 283, 614 P.2d 825 (1980), *cert. denied*, 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980); *State v. Mata*, 125 Ariz. 233, 609 P.2d 48 (1980); *Watson, supra.*

## IMPOSITION OF THE DEATH PENALTY

█ Appellant contends that the trial court abused its discretion in sentencing appellant to death. In reviewing the imposition of the death penalty, we are obliged to conduct an "independent examination of the record to determine whether the death penalty was properly imposed." *State v. Ceja*, 115 Ariz. 413, 415, 565 P.2d 1274, 1276, *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977). We will not uphold imposition of the death penalty unless either the murder or defendant differs from the norm of first degree murders or defendants. *E. g. State v. Brookover*, 124 Ariz. 38, 601 P.2d 1322 (1979); *State v. Lujan*, 124 Ariz. 365, 604 P.2d 629 (1979).

█ After conducting an aggravation-mitigation hearing pursuant to former A.R.S. § 13–454, *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978), *cert. denied*, 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979), and *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the trial court found aggravating circumstances under A.R.S. § 13–454(E)(2) of "three previous felony convictions in the United States involving the use or threat of violence on another person."

The trial court found that appellant was convicted in Minnesota on October 22, 1971, of the crime of aggravated assault with a dangerous weapon and in Illinois on September 19, 1966, of the crimes of attempted murder and aggravated battery. Appellant does not dispute these findings, and they are adequately supported in the record. The Legislature has determined that a defendant with a prior conviction under A.R.S. § 13–703(F)(1) or (2) is different from the norm of first degree murderers. We have previously upheld imposition of the death penalty where such a prior conviction is proved and the mitigating circumstances are not sufficiently substantial to call for leniency. *See, e. g., State v. Greenawalt*, 128 Ariz. 150, 624 P.2d 828 (1981) (two prior convictions); *State v. Jordan*, 126 Ariz. 283, 614 P.2d 825 (1980), *cert. denied*, 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980) (four prior convictions); *State v. Arnett*, 125 Ariz. 201, 608 P.2d 778 (1980) (one prior conviction).

With regard to mitigating circumstances, the court continued:

"All right. Now the Court has considered in connection with this resentencing everything that has been offered and everything that the Court had before it in connection with the trial and at the previous post-trial hearings in this matter with regard to mitigating circumstances.

"The Court in this resentencing and this special verdict this morning is not limiting itself to the matters set forth in the statute and is considering everything that has been offered in way of mitigation in connection with this sentence.

"The Court finds—and this is a special verdict by the Court—that there are no mitigating circumstances sufficient to call for leniency in this case. It is therefore on the charge of first degree murder the sentence of this Court that the defendant be sentenced to death."

Appellant urges we consider the following as mitigating circumstances:

"1. All parties involved, including the Appellant, were extremely intoxicated at the time of the offense;

"2. The Appellant presented evidence of self-defense, a defense rejected by the jury, but all the evidence supported the conclusion that the victim was a violent person and who, shortly before his death, had violent altercations with several men while he was armed with a knife;

"3. There is no dispute that the victim was within the immediate control of a knife at the time of his death;

"4. * * * Appellant's prior convictions of attempted murder and aggravated assault [were] based on an accomplice theory;

"5. Appellant's present conviction is largely due to the testimony of his wife, where hatred for the Appellant was evident from her statements;

"6. The appellant was an alcoholic at the time of the offense;

"7. The crime involved a classic lover's triangle, an emotionally unstable situation."

Whether appellant's intoxication or alcoholism at the time of the offense can be considered a mitigating circumstance depends on whether it significantly impaired "[h]is capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law." Former A.R.S. § 13–454(F)(1). *See State v. Jordan*, 126 Ariz. 283, 614 P.2d 825, *cert. denied*, 449 U.S. 987, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980); *State v. Smith*, 125 Ariz. 412, 610 P.2d 46 (1980). Appellant's wife testified that "[h]e was showing no effects of alcohol" when he arrived at the trailer. Although appellant testified that he was "feeling the effect of alcohol" at the time of the murder, his testimony fails to show the degree of impairment from intoxication that would constitute a mitigating circumstance. *See Jordan, supra; Smith, supra.*

Appellant contends that the fact that his Illinois conviction for attempted murder and aggravated battery was based on an aiding and abetting theory should be considered a mitigating factor. He presented testimony, which the trial judge considered, that he did not fire the shots in the Illinois incident.

In *State v. Tison,* 129 Ariz. 526, 633 P.2d 335 (1981), we held that the fact that the appellant did not actually commit the murder for which he was convicted was not a sufficiently mitigating factor in determining the severity of his sentence when considered in relation to other factors in the case. Even assuming, arguendo, that we considered appellant's not having fired the shots in the Illinois incident to be a mitigating factor, that factor would apply only to the Illinois incident. It would not operate as mitigation in reference to the Minnesota conviction for aggravated assault.

We do not feel that appellant's remaining contentions constitute sufficiently mitigating factors.

After conducting an independent examination of the record, including the aggravating circumstances and those things which appellant offered as mitigating circumstances, we agree with the trial court that "there are no mitigating circumstances sufficient to call for leniency in this case." We feel, accordingly, that the sentence of death was properly imposed.

Pursuant to our statutory obligation set forth in A.R.S. § 13–4035, we have considered the complete record and found no fundamental error.

The judgment and sentence of death are affirmed.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and HAYS and CAMERON, JJ., concur.