**Gregory Paul JOHNSON,**
**Petitioner–Appellant,**

v.

**Samuel SUBLETT, Respondent–Appellee.**

No. 94–16607.

United States Court of Appeals,
Ninth Circuit.

Submitted May 12, 1995 *.

Decided Aug. 24, 1995.

---

* The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34–4.

Gregory P. Johnson, Tucson, AZ, in pro per.

Jack Roberts, Asst. Atty. Gen., Phoenix, AZ, for respondent-appellee.

Before: GOODWIN, POOLE and KLEINFELD, Circuit Judges.

GOODWIN, Circuit Judge:

Gregory Johnson appeals pro se the District Court's denial of his post-conviction petition under 28 U.S.C. § 2254. An Arizona jury convicted Johnson of kidnapping, armed robbery and aggravated assault for his part in savagely beating and attempting to kill a man on the orders of his superior in the drug business. The Arizona courts upheld the conviction,[1] and Johnson sought habeas relief. The District Court eventually denied the petition. We affirm.

Johnson argues that the in-court identification of him by his victim was tainted by impermissibly suggestive pretrial confrontations, that prosecutorial misconduct and certain evidentiary rulings rendered his trial fundamentally unfair, and that his appellate counsel's failure to raise these issues on direct appeal constituted ineffective assistance of counsel.

## I. Facts

John Matagrano and Duane Jones worked together in the illicit drug business. When Matagrano suspected Jones of cheating him, Matagrano drove Jones to a house where petitioner Johnson and Sam Carroll were waiting. After a moment alone with Johnson and Carroll, Matagrano led Jones into the house where Johnson and Carroll beat him severely with wooden clubs and questioned him for hours. Troy Owens, who was peering through a window of the house, witnessed about thirty minutes of the beating. Eventu-

ally, Matagrano told Johnson and Carroll to kill Jones. The two loaded the now hog-tied Jones into the trunk of their vehicle and headed for the desert. Once there, they unloaded Jones and shot him in the neck with a shotgun at close range. The two departed, leaving Jones for dead. Jones remained alive and managed to walk more than four miles to get help.

Police searched the house at which the beating took place and found wooden clubs bearing traces of human blood, a shotgun with one expended shell and live shells containing the same size shot as that found in Jones' neck, and suicide notes in which Johnson expressed his desire not to go to trial. After the police had spoken with Johnson, Derek Post and Scott Megerly paid Johnson a visit. Johnson made incriminating admissions to Post and Megerly.

Prior to trial, Johnson ran into Leon Drake at a 7–Eleven. When Drake asked Johnson about rumors that Johnson had killed someone, Johnson confessed to him in full.

At trial, the government introduced against Johnson the clubs, gun, suicide notes, and car (which Jones had identified), along with the testimony of Jones, Matagrano, Drake, Owens, Post, and Megerly. Johnson in his defense relied upon the testimony of two friends who testified that he was with them the night of the assault.

## II. Suggestive Identification

■ Johnson's first attack upon his identification by Jones as one of his assailants is that Johnson's presence at a suppression hearing was so suggestive as to amount to improper coaching of the crime victim. He argues that this pretrial exposure to the victim rendered inadmissible the victim's in-court identification of Johnson before the jury.

---

1. Prior to this petition, Johnson sought federal habeas relief and was denied on the ground that he failed to raise any federal claims in state court. In *Johnson v. Lewis*, 929 F.2d 460 (9th Cir.1991), this court remanded the petition with directions to dismiss without prejudice, allowing Johnson to pursue post-conviction relief on his federal claims in state court. After a second unsuccessful trip through the Arizona judiciary, Johnson filed the habeas petition now under review.

Jones, at trial, identified Johnson as one of his two attackers and would-be killers, despite an earlier failure to identify Johnson in a photo spread. Johnson cites *Thigpen v. Cory,* 804 F.2d 893, 895–96 (6th Cir.1986), which found identification procedures impermissibly suggestive where a witness failed to identify the defendant in photo line-ups, then later made a positive identification after seeing the defendant at a preliminary hearing. The opinion of our sister circuit notwithstanding, there was no constitutional violation here. *U.S. v. Bagley,* 772 F.2d 482, 492 (9th Cir.1985), *cert. denied,* 475 U.S. 1023, 106 S.Ct. 1215, 89 L.Ed.2d 326 (1986).

First, the photo spread had no significance. If anything, Jones' failure to pick Johnson out of the photo spread was a benefit to the defense. Second, the only other identification complained of took place in a court proceeding requested by the defendant. If Johnson had been concerned about identification, he could have preserved his right to be present at every stage of the proceedings by asking for a neutral seating arrangement until after identification questions had been resolved. He made no such request and any claim that he was prejudiced by the suggestiveness of the seating arrangement was waived.

■ To prevail on habeas review, Johnson would have to show that "the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." *Stovall v. Denno,* 388 U.S. 293, 301–02, 87 S.Ct. 1967, 1972–73, 18 L.Ed.2d 1199 (1967). The bare fact that a confrontation was suggestive does not alone establish constitutional error. The confrontation must be impermissibly or unduly suggestive under the totality of the circumstances. *Neil v. Biggers,* 409 U.S. 188, 196, 93 S.Ct. 375, 380, 34 L.Ed.2d 401 (1972). In *Baker v. Hocker,* 496 F.2d 615, 617 (9th Cir.1974), the defendant argued that his presence at a preliminary hearing seated alongside two other men already identified in the crime denied him due process. While conceding that courtroom procedures are undoubtedly suggestive, we stressed that only "unnecessary" or "impermissible" suggestion

violates due process. We balanced the state's strong interest in conducting the court procedure against the dangers of misidentification, which were already mitigated by cross-examination, and held that the suggestive character of courtroom logistics was not *unnecessarily* suggestive.

The rule and reasoning of *Baker* control here. We have reviewed the pre-trial suppression hearing and find no evidence that the procedures were impermissibly suggestive. The point is an afterthought, apparently based on language from *Green v. Loggins,* 614 F.2d 219, 223 (9th Cir.1980), to the effect that this Court "is obligated to review every pre-trial encounter, accidental or otherwise, in order to insure that the circumstances of the particular encounter have not been so suggestive as to undermine the reliability of the witness's subsequent identification." Though suggestive, and indeed, "pre-trial", the defendant's voluntary presence at the suppression hearing did not violate due process.

The procedure at issue here was conducted by a court that is both authorized and required to protect the due process rights of all persons appearing before it. The state's interest in enforcing constitutional limitations on law enforcement via suppression hearings is of the highest order, and, as in *Baker,* any possible prejudice the defendant may suffer from unreliable identification is mitigated by cross-examination and other courtroom safeguards.

Arizona did not deny Johnson due process of law by having him and the victim both present at the suppression hearing.

### III. Prosecutorial Misconduct

■ This court reviews claims of prosecutorial conduct made in a habeas petition "on the merits, examining the entire proceedings to determine whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Hall v. Whitley,* 935 F.2d 164, 165 (9th Cir.1991) (internal quotations and citation omitted).

### A. Improper Arguments Regarding the State's Burden

 Johnson argues that the prosecutor improperly implored the jury to disregard the prosecution's heavy burden of proof and Johnson's presumption of innocence along with it, thereby depriving Johnson of a fair trial. The prosecutor argued to the jury in closing:

> Well, he [defendant] has no duty, ladies and gentlemen to produce any evidence. He could have sat mute, he didn't have to call anybody. That is right. That is the way the system works, and it works very well in theory. That is what we studied in law school. But this is the real world. This guy is in a lot of trouble, and he is in trouble with you people. And you people don't deal on theory. You are the people that make the system work. Your head isn't lost in clouds like some law professors who think up these things.

(R.T. of July 24, 1987 at 53–54, Prosecution's Closing). Johnson objected to this argument as improper and the trial judge overruled the objection. *Id.* at 54.

Read in isolation, Johnson's interpretation of this argument gives pause. However, when read in the broader context of the legitimate argument the prosecutor was trying to make at the time he made these remarks, and the even broader context of the repeated and correct explanations of the state's burden to the jury by both the judge and the prosecution, this prosecutorial indiscretion does not so undermine faith in the fairness of the trial as to constitute a due process violation.

The prosecutor made these remarks in response to a perceived need to explain why, if the defendant is presumed innocent, Johnson still must have felt compelled to come forward with incredible evidence of an alibi. When read in context, then, the prosecutor's arguments can be understood to have a proper meaning, that is, despite the state's burden, the defendant felt compelled to come forward with some evidence and was unable to come up with anything better than his inconsistent alibi testimony. *Id.* at 51–55.

Perhaps more importantly, after the questionable remarks at the end of the prosecutor's closing, the prosecutor emphasized the state's burden to prove every element of the charged crimes beyond a reasonable doubt. *Id.* at 66. Immediately following the prosecutor's proper reiteration of the law, the judge correctly instructed the jury regarding the state's burden and the defendant's presumption of innocence. *Id.* at 69.

### B. Improperly Vouching for a Witness' Credibility

 During closing argument, the prosecution vouched for the credibility of Leon Drake, one of the men to whom Johnson had confessed his crime. In the course of discussing the impact of Drake's testimony, the prosecutor stated, "He [Drake] is a credible witness. He was telling you the truth." *Id.* at 63. The prosecution concedes its error in this instance.

If Drake's credibility were the linchpin of the state's case, the prosecutor's unfortunate endorsement of Drake would have constituted reversible error in the Arizona courts. However, in the present case, there was a great mass of evidence against the defendant—the testimony of the man who ordered the murder, of an eyewitness to the beating, of others to whom Johnson confessed, as well as the admission of Johnson's suicide notes, the shotgun with one shell discharged, and the wooden clubs with traces of human blood. Considering the strength of the state's case, the prosecutor's overreaching could not have had the substantial impact on the verdict necessary to establish reversible constitutional error. *Brecht v. Abrahamson,* —— U.S. ——, ——, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993).

### IV. Evidentiary Errors

 The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process. *Estelle v. McGuire,* 502 U.S. 62, 67–69, 112 S.Ct. 475, 480–81, 116 L.Ed.2d 385 (1991). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Id.,* 502 U.S. at 68, 112 S.Ct. at 480.

### A. Leon Drake's Testimony

■ At trial, Drake testified that Johnson confessed his crime to him. Prior to trial, the state maintained that it was unable to locate Drake. The prosecution coincidentally located Drake the day the defense moved to preclude Drake's testimony due to his unavailability for pretrial interviews. The trial court denied the defense motion and ordered the prosecution to make Drake available for interviews over the upcoming weekend before Drake's scheduled testimony. Johnson argues that this compressed time in which to prepare prejudiced him in that he was unable to locate attendance records that would show that Johnson was in school during the time Drake claimed he met Johnson at a "7-Eleven" and Johnson confessed. Johnson did not produce the school attendance records until his appeal. *See* R.T. of July 17, 1987 at 61–67 (defense argues for preclusion of Drake).

It is not clear from the record and Johnson does not tell this court why his counsel could not obtain and present the school records at some point during trial. R.T. of July 24, 1987 at 5–6 (defense argues for mistrial or preclusion of Drake's testimony). Even assuming that obtaining the records was impossible due to Drake's unheralded appearance at the dawn of trial, Johnson could not have suffered prejudice on the scale necessary to warrant habeas due process relief. As the government points out, the elusive school records do not materially effect the evidence for or against Johnson. Although the school records show that Johnson did attend school, Drake never sufficiently narrowed the time of the alleged confession to the times Johnson was in school. Even if Johnson had endless time to prepare, the evidence he claims he could have presented would not undermine Drake's testimony.

### B. Wooden Clubs

■ Johnson argues that the admission of the wooden clubs found at the house where the beating took place was constitutional error because there was insufficient evidence linking the clubs to the crime charged. The blood identified on the clubs did not belong to the victim. We conclude that this argument presents state-law foundation and admissibility questions that raise no federal habeas issues. *Estelle v. McGuire,* 502 U.S. at 68, 112 S.Ct. at 480 (1991).

### C. Explanation of the Suicide Notes

■ Johnson sought to explain that his suicide notes were consistent with his innocence. Johnson maintained that he contemplated suicide because he lacked faith in the judicial system to vindicate the wrongly accused, based on the injustice he said he suffered in a prior criminal conviction. The trial court limited Johnson's explanation of the suicide notes because Arizona law prohibits a defendant from explaining the circumstances surrounding a previous felony conviction. *State v. Britson,* 130 Ariz. 380, 383, 636 P.2d 628, 631 (1981). Johnson now argues that the court's introduction of the suicide notes to show consciousness of guilt opened up a right of rebuttal to explain fully why he wrote the notes. Assuming that Johnson should have been allowed to give his explanation, it does not follow that there was constitutional error. Johnson was allowed to tell the jury that he lacked faith in the justice system based on a prior run-in with the law. His preclusion under state law from discussing details of his prior conviction did not render his trial fundamentally unfair.

### D. Impeachment of Derek Post

■ Before trial, Post told investigators that Johnson had confessed to him. While testifying at trial, Post backtracked, claiming that he actually never heard what Johnson said, but merely relayed what Megerly, who was also present at this alleged confession, told him Johnson said. Although Post was a prosecution witness, the prosecution impeached Post with his prior inconsistent statement to the police. The introduction of a prior inconsistent statement was a permissible and appropriate response to Post's changing testimony. *See* Arizona Rule of Evidence 607 (a party may impeach its own witness).

### E. Identification of the Car

■ Johnson contends that the victim's in-court identification of the automobile

which Johnson used to carry Jones out to the desert was tainted by unduly suggestive pretrial identification procedures and therefore should have been excluded. While this argument deserves credit for creativity, *Stovall* and its progeny do not require car line-ups. There is no authority holding that a defendant's due process right to reliable identification procedures extends beyond normal authenticity and identification procedures for physical evidence offered by the prosecution. *See, e.g., State v. Roscoe,* 700 P.2d 1312, 1324 (Ariz.1984) (en banc) (holding that right to pretrial identification procedures is inapplicable to items of physical evidence).

## V. Ineffective Assistance of Counsel

Because Johnson cannot show prejudice from any of the claimed errors significant enough to undermine confidence in the outcome of his trial, he cannot demonstrate that his counsel was constitutionally deficient. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**AFFIRMED**