**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT



| | |
|---|---|
| LANNY SMITH, | No. 16-35273* |
| Petitioner-Appellant, | D.C. No. 4:08-cv-00227-EJL |
| v. | |
| LAWRENCE WASDEN and BRENT REINKE, | MEMORANDUM** |
| Respondents-Appellees. | |

Appeal from the United States District Court
for the District of Idaho
Edward J. Lodge, District Judge, Presiding

Argued and Submitted November 14, 2017
San Francisco, California

---

\* The initial number for this case was 12-35275. However, following a remand by this court and a subsequent appeal, the case was mistakenly given a new number: 16-35273. The initial case number should have remained with the case during this subsequent appeal and we clarify this history here to avoid any potential confusion.

\*\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before:  N.R. SMITH,*** MURGUIA, and CHRISTEN, Circuit Judges.

Petitioner-Appellant Lanny Smith appeals the district court's denial of his 28 U.S.C. § 2254 habeas petition, which challenged his 1996 conviction for the first-degree murder of Leo and Mary Downard.  We have jurisdiction under 28 U.S.C. §§ 1291 and 2253, and we affirm.

**1.** Petitioner first argues trial counsel rendered ineffective assistance with respect to Eric Greenwade's testimony about shoeprint evidence.  Even assuming Petitioner could show cause and prejudice to excuse this claim's procedural default, this claim fails.  Defense expert, Richard Fox, presented a "different opinion" about the characteristics of the shoe that Greenwade compared with corresponding "abnormalities" on the image; offered an alternate explanation for the similarity between the bottom of the size 8 1/2 FootJoy and the dust-print photograph; asserted that so much detail was lost in Greenwade's adjusted photograph that "we really can't do a comparison"; opined that the "better" method was to review the high-contrast photograph taken by the State; and asserted that Fox "[did] not believe . . . [Greenwade is] qualified as a forensic footwear examiner at all."  Fox also disputed Greenwade's conclusion that the photograph

---

*** Judge N.R. Smith was drawn to replace Judge Pregerson on the panel following Judge Pregerson's death.  Judge Smith has read the briefs, reviewed the record, and listened to the oral argument.

showed an "identifying characteristic" of the particular shoe worn by the murderer, and contested Greenwade's view that the supposed abnormalities in the size 8 1/2 FootJoy corresponded to particular points in the photograph.

Defense counsel also vigorously challenged Greenwade on his lack of qualifications and experience with footprint identification, eliciting testimony that Greenwade had no background or experience in footwear identification. Defense counsel's reliance on Fox's testimony and cross-examination of Greenwade was not outside the bounds of "reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Petitioner has not shown that defense counsel was deficient for failing to retain another shoe impression expert. *See Harrington v. Richter*, 562 U.S. 86, 106–07 (2011) (highlighting the "wide latitude counsel must have in making tactical decisions" and in formulating "a strategy . . . [that] balance[s] limited resources in accord with effective trial tactics and strategies" (citation and internal quotation marks omitted)).

**2.** Petitioner also advances an ineffective assistance of counsel claim concerning counsel's failure to adequately investigate a variety of forensic evidence. *See* 28 U.S.C. § 2253. Petitioner first asserts trial counsel was ineffective by failing to test the shoes seized from Petitioner and Jeff Smith for blood. But the State's expert testified that no blood was found on either pair of

3

shoes, and the decision to forgo further testing may have been tactical, since any blood found on Petitioner's shoes could have implicated him. *See Jennings v. Woodford*, 290 F.3d 1006, 1014 (9th Cir. 2002) (counsel may choose not to investigate, provided the decision is "reasonable and informed").

Petitioner argues trial counsel was deficient for failing to inquire into Fox's work in previous criminal cases. But defense counsel discussed the decision to hire Fox with several attorneys, received a written recommendation from a colleague, reviewed Fox's curriculum vitae, and spoke with him about his background. He also purchased several books on footprint and ballistics evidence so he could be informed and have a meaningful interview with Fox. Counsel's decision to hire Fox was not constitutionally deficient.

Petitioner asserts that counsel should have hired another expert to rebut specific ballistics evidence. But Fox examined the casings and the Fieldmaster rifle and agreed with the State's experts' conclusions. *See, e.g.*, *Winfield v. Roper*, 460 F.3d 1026, 1041 (8th Cir. 2006) ("Counsel is not required to shop for experts who will testify in a particular way, and . . . counsel's decision not to investigate the issue further was reasonable given the two concurring opinions of different [experts]."). And as the district court concluded, the prosecutor's inappropriate conduct in asking Fox a question outside the scope of direct examination "shows

4

neither that Fox was incompetent nor that his attorneys were ineffective," because "[n]either defense counsel nor his expert need anticipate bad behavior from the prosecution."

Petitioner argues trial counsel's failure to independently examine and test other forensic evidence, such as hair, fiber, and semen, as well as sex crimes kits, constitutes ineffective assistance. But the State's experts did not testify that any of this forensic evidence implicated Petitioner. Defense counsel had limited resources at his disposal. *Harrington*, 562 U.S. at 107. Whether the hair and fiber evidence would have exonerated Petitioner was speculative at best, and at worse might have inculpated him.

**3.** Petitioner raises a number of other claims asserting that his trial counsel rendered deficient performance. None are meritorious. Concerning Beverly Huffaker's testimony, Petitioner has not shown that counsel's decision to stipulate to the admission of a receipt was constitutionally deficient. Furthermore, defense counsel sought to soften the blow of Huffaker's testimony by eliciting testimony suggesting he was fond of "grandmother types" because they "accept[ed] him and love[d] him for the way he is[.]" Counsel's reliance on cross-examination to rebut Huffaker's testimony was not unreasonable.

**4.** Petitioner also asserts various due process claims. First, Petitioner argues the trial court violated his right to due process under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), by permitting Greenwade to offer an opinion that the size 8 1/2 FootJoy matched the adjusted image "extremely closely," This claim, however, was both procedurally defaulted and waived. Trial counsel properly objected to Greenwade's qualifications and testimony at trial, but the issue was not raised on direct appeal, nor was his state petition for postconviction relief ever amended to add a *Daubert* claim. Petitioner did not provide the Idaho Supreme Court "the operative facts and the federal legal theory on which his claim is based" sufficient to satisfy the exhaustion requirement, *Koerner v. Grigas*, 328 F.3d 1039, 1046 (9th Cir. 2003) (citation and quotation marks omitted), nor has Petitioner demonstrated that this default should be excused.

Petitioner also asserts the trial court's exclusion of evidence of Jeff Smith's prior bad acts violated due process, but the trial court's rulings did not render the trial "fundamentally unfair in violation of due process." *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995). The trial court permitted defense counsel to ask about specific instances of Jeff's violent behavior to impeach his statement that he had a "fair" reputation, and to support the theory that Jeff was the actual

6

perpetrator. *See* Idaho R. Evid. 608(b). The court ultimately excluded extrinsic evidence of Jeff's violent character because it concluded that the proffered evidence did not tie Jeff to the crime charged or the victims in the case, *see* Idaho R. Evid. 608(b), but the court did not prohibit Petitioner from presenting a defense in other ways (*e.g.*, by cross-examining Jeff about the information contained within police reports). The exclusion of some evidence of Jeff's bad acts therefore did not deprive Petitioner of a fair trial, nor were Idaho's Rules of Evidence "arbitrary or disproportionate to the purposes they are designed to serve" such that his right to present a defense was abridged. *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (citation and internal quotation marks omitted).

Petitioner asserts that allowing James Swogger to testify violated due process, but he cites no law supporting his argument that the district court violated his constitutional rights by allowing a witness who equivocated on the stand. The use of a jailhouse informant does not automatically render a trial unfair. *See Hoffa v. United States*, 385 U.S. 293, 311–12 (1966).

**5.** Petitioner raises several claims concerning the prosecution's failure to disclose exculpatory or impeaching information under *Brady v. Maryland*, 373 U.S. 83 (1963). He first asserts the prosecution's failure to disclose chain of custody information constituted a *Brady* violation. But he does not offer an

7

affidavit from trial counsel or other evidence indicating that the chain-of-custody record was not disclosed before trial, and trial counsel did not object to the State's assertion in its closing argument that there had "[n]ot [been] one mistake in the chain of custody. Not one item lost in the chain of custody." Petitioner argues there were irregularities in Detective Rodriguez's handling of the crime scene, and asserts that several documents regarding the size of the shoes seized from Jeff Smith's apartment and those seized from Petitioner's apartment were not disclosed to trial counsel. But a different detective collected the shoes, realized he made an error in his report, corrected it in a supplemental report, and testified at trial that the shoes seized from Jeff Smith were a size 9 1/2. In light of this testimony, and that of a defense witness who testified that Petitioner was aware that Petitioner's shoeprint had been found at the Downards' home, we cannot conclude the allegedly withheld evidence was material. Since Petitioner has not shown he would have a "colorable or potentially meritorious *Brady* claim" if the allegedly withheld information were considered, we decline to remand the claim to state court. *Gonzalez v. Wong*, 667 F.3d 965, 980 (9th Cir. 2011).

Federal habeas counsel asserts that documents available to the prosecution detailing Jeff Smith's prior bad acts were not disclosed to the defense, but does not show which facts or incidents were unknown to trial counsel. Trial counsel cross-

examined Jeff about specific instances of violent behavior and elicited an admission that he had broken into and stolen things from his father's home before. Much of the allegedly suppressed material was cumulative of facts trial counsel already knew.[1]  Even assuming the prosecution failed to disclose some evidence of Jeff's bad acts, we cannot conclude the additional evidence was material.  *United States v. Sedaghaty*, 728 F.3d 885, 900 (9th Cir. 2013).

Petitioner's *Brady* claims concerning the prosecution's alleged failure to disclose possible alternate perpetrators and its alleged failure to disclose Swogger's recantation also fail.  The information about alternate perpetrators would not, if disclosed, have undermined confidence in the fairness of the trial or the verdict. *Sedaghaty*, 728 F.3d at 900.  Swogger's statement to federal habeas counsel was unsworn; there is no corroborating evidence that Swogger initiated contact with the police; Swogger acknowledged at trial that he wanted "a deal" in exchange for testifying; and on cross-examination, the defense brought out Swogger's letter to Detective Rodriguez.  In short, the defense thoroughly impeached Swogger's

---

[1]  For instance, a General Offense Report from April 8, 1990 describing an incident in which Robin Smith alleges Jeff came to her place of employment and threatened her was included in the defense's Exhibit AA at trial, and a corresponding Complaint Report was disclosed in the most recent discovery.  Since this incident was known to trial counsel, the alleged failure to disclose the Complaint Report detailing the same incident fails *Brady*'s materiality prong.

credibility. Swogger's recantation would not have raised a "reasonable probability" of a different result. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

Finally, Petitioner asserts a *Brady* violation related to the prosecution's failure to disclose Jaime Hill's statement to police. This is the only *Brady* claim that was properly raised and exhausted in state proceedings. Given the inconsistencies in Hill's testimony, her father's uncertainty about when the incident took place, and the lack of evidence that officials working on the Downard case knew about the incident such that they would have had a duty to disclose it to the defense, we cannot conclude the issue is "debatable among jurists of reason." *Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000) (internal quotation marks omitted).

**6.** Petitioner also argues the district court's denial of his requests for testing and investigation constituted an abuse of discretion. Petitioner's discovery request related only to his unmeritorious ineffective assistance of counsel claim for failing to independently test forensic evidence. Because we hold trial counsel did not render ineffective assistance in his investigation of forensic evidence, the district court did not abuse its discretion by denying Petitioner's request for funding and discovery.

Petitioner argues the district court's denial of his federal habeas counsel's request to depose James Swogger constituted an abuse of discretion. The only claims remaining in Petitioner's Amended Petition when the court denied his discovery request concerned the right to present a defense and ineffective assistance of trial and appellate counsel, and Petitioner did not indicate how deposing Swogger would be germane to these substantive claims. He therefore has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253.

**7.** Finally, Petitioner has not shown there is a "'unique symmetry' of otherwise harmless errors, such that they amplify each other in relation to a key contested issue in the case," *Ybarra v. McDaniel*, 656 F.3d 984, 1001 (9th Cir. 2011) (quoting *Parle v. Runnels*, 505 F.3d 922, 933 (9th Cir. 2007)), nor otherwise explained why this rarely successful doctrine is applicable here, *see Harris ex rel. Ramseyer v. Wood*, 64 F.3d 1432, 1438 (9th Cir. 1995). Accordingly, he did not show cumulative error.

**AFFIRMED.**

11